# EXHIBIT 1



OFFICE OF
INTERNATIONAL
AFFAIRS

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
100 F STREET, N.E
WASHINGTON, DC 20549-1004

TELEPHONE:  (202) 551-4526
TELECOPIER:  (202) 772-9280

April 1, 2015

**VIA OVERNIGHT MAIL**

National Court Administration
Attn:  Director of International Affairs
Seocho-daero 219 Seocho-gu
SEOUL 137-750
Republic of Korea

> **Re:**   *Securities and Exchange Commission v. Justin Moongyu Lee, et al.*;
> **OIA Ref: 2013-02551-003**

Dear Sir or Madam:

In accordance with the Hague Service Convention for Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial matters, we request that your office, as the Central Authority for the Republic of Korea, effect service of process of the enclosed documents as soon as possible on defendant Justin Moongyu Lee in the above-referenced case.  Under U.S. Federal Rules of Civil Procedure, Rules 4(c)(2) and 4(f)(1), the attorney/applicant is authorized to transmit this request for service under the Hague Service Convention.

Enclosed please find copies of the following documents in connection with the above-referenced case:  (1) Form USM-94, Hague Service Convention Request for Service Abroad of Judicial or Extrajudicial Documents (one original in English, one copy in English, one copy in Korean); (2) Summons (two copies in English, two copies in Korean); (3) Complaint (two copies in English, two copies in Korean); (4) Notice of Assignment of United States Judges (two copies in English, two copies in Korean); (5) Standing Order Regarding Newly Assigned Cases (two copies in English, two copies in Korean); (6) SEC Notice of Change of Address (two copies in English, two copies in Korean) (7) Default by Clerk of Entity Defendants (two copies in English, two copies in Korean).

The documents are provided for the defendant for whom service is requested, and who is currently located in Korea.  **The defendant is Justin Moongyu Lee, whose last known address is Seoul Detention Center, Kyungki-Do, Euiwang-City, Pankyoro 143 (147-702), Republic of Korea.**

EXHIBIT___1___ PAGE___8___

National Court Administration
Attn: Director of International Affairs
April 1, 2015
Page 2 of 2


Please return the Form USM-94 Certificate of Service to Karen Matteson, Attorney for the U.S. Securities and Exchange Commission, 444 South Flower Street, Suite 900, Los Angeles, CA 90071, USA.

If you need any additional information, please feel free to contact me by telephone at 202-551-4526 or by E-mail at GreinerM@sec.gov.  Thank you for your assistance in this matter.

Sincerely,

Matthew B. Greiner
Branch Chief


Enclosures as noted

cc:  Karen Matteson, SEC Attorney, Los Angeles, CA (w/o enclosures)

EXHIBIT ___ PAGE 9

*15 12 104* 

**U.S. Department of Justice**
United States Marshals Service

# REQUEST
# FOR SERVICE ABROAD OF JUDICIAL OR EXTRAJUDICIAL DOCUMENTS
*DEMANDE*
*AUX FINS DE SIGNIFICATION OU DE NOTIFICATION À L'ETRANGER*
*D'UN ACTE JUDICIAIRE OU EXTRAJUDICIAIRE*

**Convention on the service abroad of judicial and extrajudicial documents in civil or commercial matters, signed at The Hague, November 15, 1965.**
*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.*

| Identity and address of the applicant<br>*Identité et adresse du requérant* | Address of receiving authority<br>*Adresse de l'autorité destinataire* |
|---|---|
| Karen Matteson<br>Securities and Exchange Commission ("SEC")<br>444 South Flower Street, Suite 900<br>Los Angeles, CA 90071<br>Attorney has authority to make this request<br>pursuant to Fed. R. Civ. P. 4 | National Court Administration<br>Attn: Director of International Affairs<br>Seocho-daero 219 Seocho-gu<br>SEOUL, 137-0950<br>Republic of Korea |

**The undersigned applicant has the honour to transmit -- in duplicate-- the documents listed below and, in conformity with article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e., (identity and address)**
*Le requérant soussigné a l'honneur de faire parvenir--en double exemplaire--à l'autorité destinataire les documents ci-dessous énumérés, en la priant, conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au destinataire, à savoir:*
*(identité et adresse)*

Justin Moongyu Lee, Seoul Detention Center

Kyungki-Do, Euiwang-City, Pankyoro 143 (147-702)

[X] (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention.\*
*a) selon les formes légales (article 5 alinéa premier, lettre a).*

[ ] (b) in accordance with the following particular method (sub-paragraph (b) of the first paragraph of article 5)\*:
*b) selon la forme particulière suivante (article 5, alinéa premier, lettre b) :*

[ ] (c) by delivery to the addressee, if he accepts it voluntarily (second paragraph of article 5)\*:
*c) le cas échéant, par remise simple (article 5, alinéa 2).*

**The authority is requested to return or to have returned to the applicant a copy of the documents and of the annexes with a certificate as provided on the reverse side.**
*Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte - et de ses annexes - avec l'attestation figurant au verso.*

List of documents
*Enumération des pièces*

Done at Los Angeles, CA , the March 25, 2015
*Fait à , le*

1. Summons;      2. Complaint
3. Notice of Assignment to U.S. Judges
4. Standing Order Re Newly Assigned Cases
5. SEC Notice of Change of Address
6. Default by Clerk of Entity Defendants

Signature and/or stamp
*Signature et/ou cachet*

---

\*Delete if inappropriate
*Rayer les mentions inutiles.*

Form USM-94
Est. 11/77
(Formerly OBD-116, which was formerly LAA-116, both of which may still be used)


EXHIBIT \_\_\_ PAGE \_\_\_

## CERTIFICATE
### *ATTESTATION*

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,
*L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,*

1) that the document has been served *
*1)  que la demande a été exécutée*
     -- the (date) — *le (date)* _____
     — at (place, street, number) - *à (localité, rue, numéro)*

_____

     -- in one of the following methods authorized by article 5:
     -- *dans une des formes suivantes prévues à l'article 5:*

        ☐ (a) in accordance with the provisions of sub-paragraph (a) of the first paragraph of article 5 of the Convention*.
            *a) selon les formes légales (article 5. alinéa premier, lettre a)*

        ☐ (b) in accordance with the following particular method:
            *b) selon la forme particulière suivante:* _____

        ☐ (c) by delivery to the addressee, who accepted it voluntarily.*
            *c) par remise simple.*

     The documents referred to in the request have been delivered to:
     *Les documents mentionnés dans la demande ont été remis à:*

        - (identity and description of person)
        - *(Identité et qualité de la personne)*

_____

        - relationship to the addressee family, business or other
        - *liens de parenté de subordination ou autres avec le destinataire de l'acte:*

_____

2) that the document has not been served, by reason of the following facts*:
*2) que la demande n'a pas été exécutée, en raison des faits suivants:*

_____

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement*
*Conformément  à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint.*

ANNEXES
*Annexes*

Documents returned:
*Pieces renvoyées*

_____
_____
_____

In appropriate cases, documents establishing the service:
*Le cas échéant, les documents justificatifs de l'exécution:*

Done at _____ , the _____
*Fait à* _____ *, le* _____

Signature and/or stamp
*Signature et/ou cachet*

_____
_____



## SUMMARY OF THE DOCUMENT TO BE SERVED
### *ÉLÉMENTS ESSENTIELS DE L'ACTE*

**Convention on the service abroad of judicial and extrajudicial documents In civil or commercial matters, signed at The Hague, November 15, 1965.**

*Convention relative à la signification et à la notification à l'étranger des actes judiciaires ou extrajudiciaires en matière civile ou commerciale, signée à La Haye, le 15 novembre 1965.*

**(article 5, fourth paragraph)**
*(article 5, alinéa quatre)*

**Name and address of the requesting authority:**
*Nom et adresse de l'autorité requérante:*

U.S. Securities and Exchange Commission ("SEC"), 100 F Street, Washington, D.C. 20549-5720

**Particulars of the parties:**
*Identité des parties:*

SEC is a US Government agency. Justin Moongyu Lee, an individual, is a principal of U.S. companies.

### JUDICIAL DOCUMENT
*ACTE JUDICIA IRE*

**Nature and purpose of the document:**
*Nature et objet de l'acte:*

Complaint in federal court lawsuit alleges violations of U.S. securities laws and requests relief.

**Nature and purpose of the proceedings and, where appropriate, the amount in dispute:**
*Nature et objet de l'instance, le cas échéant, le montant du litige:*

SEC is suing Justin Moongyu Lee alleging that he violated U.S. securities laws.

**Date and place for entering appearance:**
*Date et lieu de la comparution:*

The answer must be filed with the Court within 21 days after service of the Summons and Complaint.

**Court which has given judgment**:**
*Juridiction qui a rendu la décision:*

The Summons was issued by the U.S. District Court for the Central District of California.

**Dale of judgment**:**
*Date de la décision:*

The Summons is dated September 3, 2014.

**Time limits stated in the document**:**
*Indication des délais figurant dans l'acte:*

The Answer is due within 21 days after service of the Complaint.

### EXTRAJUDICIAL DOCUMENT
*ACTE EXTRAJUDICIAIRE*

**Nature and purpose of the document:**
*Nature et objet de l'acte:*

**Time limits stated in the document:****
*Indication des délais figurant dans l'acte:*



EXHIBIT____I____PAGE__12

미합중국 법무부
미합중국 연방 재판 집행 관청



요 청

국외 사법 혹은 사법 범위 의 문서 인도를 위한

*DEMANDE*

*AUX FINS DE SIGNIFICATION OU DE NOTIFICATION À L'ETRANGER*
*D'UN ACTS JUDICIAIRE OU EXTRAJUDICIAIRE*

1965 년 11 월 15 일에 헤이그에서 서명된,
국외 사법 그리고 사법 외 민사 또는 사업용 문제에 관한 문서 인도에 관한 협정.

*Convention relative a la signification et a la notification a retranger des actes judiciaires ou*
*extrajudiciaires en matiere civile ou commerciale, signee a La Haye, le 15 novembre 1965.*

| 신청인의 신분과 주소 | 수신 관리의 주소 |
|---|---|
| *Identite et adresse du requerant* | *Adresse de l'autorite destinataire* |
| Karen Matteson<br>증권거래위원회("SEC")<br>444 South Flower Street, Suite 900<br>Los Angeles, CA 90071<br>연방민사법 4 에 따라 변호사는 이 요청을 할 권한이 | 137-0950 대한민국<br>서울 서초구 서초대로 219<br>국립 사법 행정소<br>국제 문제 담당 국장 귀하 |

서명한 신청인은 아래 목록된-여러 부수의- 문서를 보냄을 영광으로 생각합니다. 그리고 위에 언급한, 협정의 제 5 조항에 따라, 다음 주소로
문서들의 한부를 즉각 송달해 주시기를 요청합니다
(이름과 주소)
*Le requerant soussignee a l'honneur de faire parvenir—en double exemplaire--a l'autorite destinataire les documents ci-dessous*
*Onumeres, en la priant, conformement a Particle 5 de la Convention precitee, d'en faire remettre sans retard un exemplaire au*
*destinataire, a savoir:*
*(identite et adresse)*

147-702 경기도, 의왕시 판교로 143, 서울 구치소
저스 턴 이문규

☒ (a) 협정의 5 항 첫귀절의 부속 귀절(a)의 규정에 준해서.*
*a) selon les formes legales (article 5 alinea premier, lettre a).*

☐ (b) 5 항의 첫 귀절의 부속 (b)의 다음과 같은 특별한 방법을 통해서*:
*b) selon la forme particuliere suivante (article 5, alinea premier, lettre b) :*

_____

_____

☐ (c) 수신인이 자발적으로 수취할 경우, 수신인에게 송달함으로써(5 항의 두번째 귀절)*:
*c) le cas Ocheant, par remise simple (article 5, alinea 2).*

귀하께서는 이 문서의 한부와 그에 부속한 자료를, 뒷면에 제공되는대로 증명확인하시어, 동 신청인에게 되돌려보내주심이 요구됩니다.
*Cette autorite est priee de renvoyer ou de faire renvoyer au requerant un exemplaire de l'acte - et de ses annexes avec*
*l'attestation figurant au verso.*

문서 목록
*Enumeration des pieces*

1. 소환장;          2 . 고 소 장
3. 미합중국 담당 판사 통지서
4. 새 임무 담당에 대한 의사 규칙
5. 증권거래위원회 주소 변경 통지서
6. 서기에 의한 피고들의 결석 재판

캘리포니아 로스앤젤레스에서          2015년 3월 25일
*Fait a* _____ *, le*

서명 그리고/또는 도장
*Signature et/ou cachet*
_____  _____  _____

---

*\*Delete if inappropriate*
*Rayer les mentions inutiles.*

Form USM-94
Est. 11/77
(Formerly OBD-116, which was formerly LAA-116, both of which may still be used)



EXHIBIT____1____PAGE___13___

확인 증명
*ATTESTATION*

서명한 관원은 협정 6 항에 따라서, 확인 증명하게 됨을 영광으로 생각합니다,
*L'autonle soussignee a I'honneur d'attester conformement a radicle 6 de ladite Convention,*

1) 그 문서들은 송달 됐다*
*1) quo la demande a etc execute°*
   — 날짜-- *le (date)* _____     _____
   — 주소- *a (localite, rue, numero)* _____

   -- 5 항에서 허가한 다음 방법들 중 하나로:
   *dans une des formes suivantes provues a Particle 5:*

   ☐ (a) 협정 5 항의 첫째 귀절의 부속 규정에 따라서*.
         *a) scion les formes legales (article 5. alinea premier, lettre a)*
   ☐ (b) 아래의 특별한 방법에 의해서:
         *b) selon la forme particuliere suivante:* _____
   ☐ (c) "자발적으로" 수취한, 수신인에게 전달함으로써.*
         *c) par remise simple.*

   요청서에서 말한 문서들은 아래 주소로 배달됐다:
   *Les documents mentionnes dans la demande ont etc remis a:*

   - (수취인의 이름과 인상착의)
   – *(Identite et qualite de la personne)* _____

   - 수취인 가족, 사업체, 혹은 기타 관계
   – *liens de parento de subordination ou autres avec le destinataire de l'acte:* _____

2) 다음과 같은 사실 때문에, 그 문서는 송달되지 못했다":
*2) que la demande n'a pas ate executee, eŋ raison des faits suivants:*


협정 12 항의 둘째 귀절에 일치하게, 신청인은 문서들의 첨부한 자세한 내역의 배달 경비를 지불하거나 혹은 경비를 변상할 것을 요청합니다.*
*Conformement a /'article 12, alinea 2, de ladite Convention, le reque rant est prie de payer ou de rembourser les frais dont le detail figure au memoire ci-joint.*


부록
*Annexes*
반환된 문서들:
*Pieces renvoyees*
_____
_____

| | |
|---|---|
| 적당한 경우, 문서들은 다음 용역기관을 사용한다: | 장소 , 날짜 _____ |
| *Le cas echoant, les documents justificatifs de l'execution:* | *Fait a* , |
| | 서명 그리고/또는 도장 |
| | *Signature et/ou cachet* |

_____
_____

송달할 문서의 개요
*ELEMENTS ESSENT1ELS DE L'ACTE*

헤이그에서 **1965** 년 **11** 월 **15** 일에 서명된, 민사 혹은 상업상의 문제에 대한 사법적 그리고 사법 외 적인 문서의
해외 송달에 대한 협정.

*Convention relative a la signification at a la notification a POtranger des actes judiciaires ou*
*extrajudiciaires*
*en matiOre civile ou commerciale, signOe a La Haye, le 15 novembre 1965.*

**(5 항, 네 번째 귀절)**
*(article 5, alinea quatre)*

요청하는 관리의 이름과 주소:
*Nom et adresse de l'autorite requerante:*
미국 증권거래위원회("SEC"), 100 F Street, Washington, D.C. 20549-5720

당사자의 상세 정보:
*Identite des parties:*
SEC 은 미합중국의 관청의 하나이다. 개인, 저스틴 이문규는 미국 회사들의 사장이다

사법적 문서
*ACTE JUDICIA IRE*

문서의 성격과 목적:
*Nature et objet de l'acte:*
연방법원이 제소한 고소장은 미국 증권법을 위반했다고 주장하며 구제를 요청하고 있다.

소송의 진행과 목적 그리고, 적용될 경우, 분쟁된 금액수 :
*Nature et objet de ('instance, le cas echeant, le montant du litige:*
SEC 은 저스틴 이문규가 미국 증권법을 위반했다고 주장하고 있다.

출두 들어간 날짜와 장소:
*Date at lieu de la comparution:*
답변은 소환장과 고소장이 송달된 후 **21** 일 이내에 법원에 접수게재 되어야만 한다

판결 내린 법원**:
*Juridiction qui a rendu la decision:*
소환장은 미합중국 지방법원 캘리포니아 중앙 지구에서 발부됐다.

판결 날짜**:
*Date de la decision:*
소환장은 2014 년 9 월 3 일자로 돼있다.

문서에 명시된 시간 제한**:
*Indication des delais figurant dans l'acte:*
고소장을 송달한지 21 일 이내에 답변을 해야 한다.

사법 외 적 문서
*ACTE EXTRAJUDICIA1RE*

문서의 성격과 목적:          *Nature*
*et objet de l'acte:*

문서에 명시된 시간 제한:**
*Indication des delais figurant dans l'acte:*

EXHIBIT ___1___ PAGE ___15___


Case 2:14-cv-06865-RGK-E   Document 5   Filed 09/04/14   Page 1 of 2   Page ID #:30

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Central District of California

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No.  2:14-cv-06865 RGK-Ex |
| Justin Moongyu Lee; Rebecca Taewon Lee; Thomas Edward Kent; American Immigrant Investment Fund I, LLC; BioFuel Venture IV, LLC; BioFuel Venture V, LLC; Nexland, Inc., dba Nexland Investment Group; and Nexsun Ethanol, LLC. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*    Justin Moongyu Lee
Seoul Detention Center
Kyungki-Do, Euiwang-City, Pankyoro 143 (147-702)
Republic of Korea

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    KAREN MATTESON
Securities and Exchange Commission
Los Angeles Regional Office
444 S. Flower Street, 9th Floor
Los Angeles, CA 90071
(323) 965-3840

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:    09/04/2014

*Signature of Clerk or Deputy Clerk*

EXHIBIT ___|___ PAGE 16

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.   2:14-cv-06865 RGK-Ex

**PROOF OF SERVICE**

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

    ☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

    ☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

    ☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

    ☐ I returned the summons unexecuted because _____ ; or

    ☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.


Date: _____

                                           _____

                                             *Server's signature*

                                           _____

                                           *Printed name and title*

                                           _____

                                           *Server's address*

Additional information regarding attempted service, etc:



| Print | Save As... | | Reset |

EXHIBIT ___|___ PAGE __*11*__

AO 440 (Rev. 06/12) 민사소송 소환장

# 미합중국 지방 법원

## 캘리포니아 중앙 지구

| | |
|---|---|
| 증권 거래 위원회 | ) |
| 원고(들) | ) 민사 소송 번호. 2:14-cv-06865 RGK-Ex |
| | ) |
| 대. | ) |
| | ) |
| 저스틴 이문규; 레베카 이태원; 토마스 에드워드 켄트; | ) |
| 미국 이민 투자 기금 I 유한책임회사; | ) |
| 바이오퓨엘 IV 유한책임회사; 바이오퓨엘 벤쳐 V 유한책임회사; | ) |
| 넥스랜드 투자구룹으로 사업한 넥스랜드 주식회사; 넥션 에타놀 | ) |
| 유한책임회사, | ) |
| 피고(들) | ) |

### 민사 소송 소환장

수신자: (피고의 이름과 주소)

> 147-702  대한민국
> 경기도 의왕시 판교로 143
> 서울 구치소
> 저스틴 이문규 앞

　　당신에게 소송이 제기됐다.

　　당신에게 이 소환장이 송달된 후 21일 내로(당신이 이를 받은 날은 계산하지 않고) ─ 혹은 60일 만약 당신이 미합중국이거나 또는 미합중국 기관, 또는연방민사법12 (a)(2) or (3) 에 설명된 미합중국의 관리거나 직원일 경우─연방민사법제 12조에 따라 당신은 첨부된 고소 혹은 발의에 대한 답변을 원고에게 해야만 한다. 답변이나 소송은 원고나 혹은 검사에게 해야만 한다. 검사의 이름과 주소는:

KAREN MATTESON
Securities and Exchange Commission
Los Angeles Regional Office
444 S. Flower Street, 9th Floor
Los Angeles, CA 90071
(323) 965-3840

　　만약 당신이 반응을 하지 않을 경우, 당신에 반하여 이 고소에서 요구된 구제를 위한 결석 판결이 내려질 것이다. 당신은 당신의 답변이나 혹은 발의도 법원에 기재해야만 한다.

법원 서기

날짜: ___2014년 9월 4일___

_Carmen Reyes_

법원 서기나 서기보의 서명

EXHIBIT  1  PAGE  18

AO 440 (Rev. 06/12) 민사 소송 소환장 (페이지 2)

민사 소송 번호. 2:14-cv-06865 RGK-Ex

## 송달 증명

### (이 부분은 연방민사법 4 (I)이 요구하지 않는한 게재하지 말아야 한다)

나는 수신인(이름과 직책, 직책 있을 경우)_____ 의 소환장을 (날짜)_____ 받았다.

☐  나는소환장을 직접 본인에게 송달했다. (장소)_____

(날짜)_____; 혹은

☐  나는 소환장을 본인의 거주처 혹 살던 장소의 (이름)_____에게 맡김. 그곳에 사는 적정 연령의 식별있는 사람임.
(날짜)_____, 그리고 복사본 한 부를 전 주소로 우편물로 보냈다; 혹은

☐  나는법에 의해 (단체명)_____ 을 대신하는 (개인의 이름)_____ 에게 소환장을 (날짜)_____
_____에 송달했다.

☐  소환장을 송달하지 못하고 반환했는데 이유는_____; 혹은

☐  기타 (구체적으로)

내 수수료는 교통비 $_____ 수고료 $_____, 총합 $_____0.00_____.

나는 위증죄의 처벌을 각오하고 이 정보가 진실임을 단언한다.

날짜:_____                    _____
                                                              송달인 서명

                                                   _____
                                                              이름과 직책

                                                   _____
                                                              송달인의 주소

송달 시도에 관련한 추가 정보 등:

EXHIBIT __|__ PAGE __19__

KAREN MATTESON (Cal. Bar No. 102103)
Email: mattesonk@sec.gov
CAROL W. LALLY (Cal. Bar No. 226392)
Email: lallyc@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Lorraine Echavarria, Associate Regional Director
John W. Berry, Regional Trial Counsel
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036
Telephone: (323) 965-3998
Facsimile: (323) 965-3908

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:14-cv-06865 |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| JUSTIN MOONGYU LEE; REBECCA TAEWON LEE; THOMAS EDWARD KENT; AMERICAN IMMIGRANT INVESTMENT FUND I, LLC; BIOFUEL VENTURE IV, LLC; BIOFUEL VENTURE V, LLC; NEXLAND, INC., dba NEXLAND INVESTMENT GROUP; and NEXSUN ETHANOL, LLC, | |
| Defendants. | |

Plaintiff Securities and Exchange Commission ("SEC") alleges:

## JURISDICTION AND VENUE

1.    The Court has jurisdiction over this action pursuant to Sections 20(b),

1   20(d)(1) and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§

2   77t(b), 77t(d)(1) & 77v(a), and Sections 21(d)(1), 21(d)(3)(A), 21(e) and 27(a) of the

3   Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78u(d)(1),

4   78u(d)(3)(A), 78u(e) & 78aa(a).  Defendants have, directly or indirectly, made use of

5   the means or instrumentalities of interstate commerce, of the mails, or of the facilities

6   of a national securities exchange in connection with the transactions, acts, practices

7   and courses of business alleged in this Complaint.

8        2.    Venue is proper in this district pursuant to Section 22(a) of the Securities

9   Act, 15 U.S.C. § 77v(a), and Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a),

10  because at all relevant times each of the individual defendants resided in this district,

11  the entity defendants were headquartered in this district, and certain of the

12  transactions, acts, practices and courses of conduct constituting violations of the

13  federal securities laws occurred within this district.

14                                **SUMMARY**

15       3.    This case involves a scheme perpetrated by two immigration attorneys,

16  Defendant Justin Moongyu Lee ("J. Lee") and his law partner Defendant Thomas

17  Edward Kent ("Kent"), as well as J. Lee's spouse, Defendant Rebecca Taewon Lee

18  ("R. Lee").  J. Lee, Kent and R. Lee defrauded Chinese and Korean investors by

19  claiming that their monies would be invested in a program that met the requirements

20  of the United States Government EB-5 visa program, which is administered by the

21  United States Citizenship and Immigration Service ("USCIS"), and provides

22  immigrant investors conditional permanent residency status for a two-year period,

23  followed by permanent residency if the required program conditions are met.

24  Specifically, the Defendants represented that the offered investment was EB-5

25  eligible, and money raised would be used to build and operate an ethanol production

26  plant in Kansas.

27       4.    Under the EB-5 program, an immigrant who invests capital in a

28  "commercial enterprise" in the United States may petition USCIS and receive

EXHIBIT___1___PAGE___21___

1  conditional permanent residency status for a two-year period.  The immigrant must

2  invest at least $500,000 in a "Targeted Employment Area" ("TEA") and thereby

3  create at least ten full-time jobs for United States workers.  If the immigrant satisfies

4  these and other conditions within the two-year period, the immigrant may then

5  petition the USCIS for permanent residency.

6      5.      To facilitate investment and job creation within a TEA, the EB-5

7  program allows entities to apply to USCIS to become approved "regional centers."

8  To become a regional center, the entity must demonstrate, with supporting economic

9  and statistical studies, how it will promote economic growth, including job creation.

10 In this case, as explained below, J. Lee and Kent applied to USCIS in 2006 on behalf

11 of Kansas Biofuel Regional Center, LLC, for designation of Kansas Biofuel as a

12 "regional center."  Among other representations, J. Lee and Kent claimed to USCIS

13 that there would be "substantial economic benefit" to the area stemming from

14 construction and operation of new ethanol plants, including "thousands" of new jobs.

15     6.      From March 2009 to April 2011, the Defendants raised $11,455,000

16 from twenty-four investors through three offerings, purportedly for Defendant

17 Nexsun Ethanol, LLC to construct an ethanol plant in Kansas.  Rather than investing

18 the monies as promised – and as required for the investors to obtain residency – the

19 Defendants misappropriated at least $7,210,000, or 62.94%, of the total amount

20 raised.  Among other misuses, the Defendants misappropriated $3,895,000, over one-

21 third of the investors' monies, and misused these monies to finance an unrelated

22 project in the Philippines to extract iron ore from sand; and misappropriated and

23 misused an additional $2,380,000 of investors' monies to refund principal to

24 investors in other offerings.  The EB-5 eligible ethanol production plant in Kansas the

25 Defendants represented the investors' funds would be used to build was, in fact,

26 never built.  J. Lee, Kent and R. Lee carried out this fraud through a number of

27 entities, which are also named as Defendants.

28     7.      By engaging in this conduct, the Defendants violated the antifraud

EXHIBIT ___l___ PAGE _22_

1  provisions of Sections 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and Section
2  10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(a) and (c)
3  thereunder, 17 C.F.R. 240.10b-5(a) & 240.10b-5(c), and J. Lee, Kent and the entity
4  Defendants additionally violated Exchange Act Rule 10b-5(b), 17 C.F.R. § 240.10b-
5  5(b), with J. Lee alternatively violating Rule 10b-5 as a control person of each of the
6  entity Defendants.

7                                    **THE DEFENDANTS**

8         8.    **Justin Moongyu Lee ("J. Lee")**, a Los Angeles resident, was at all
9  relevant times an attorney and member of the California State Bar until he was
10 suspended on July 1, 2014, for failure to pay bar membership fees while disciplinary
11 charges relating to the fraud alleged in this Complaint were pending against him.  At
12 all relevant times, he maintained the Law Offices of Lee & Kent with Defendant
13 Kent, in Los Angeles, California, and also held himself out to USCIS, to Kent and to
14 investors, as a certified public accountant.  J. Lee founded, and was the chief
15 executive officer ("CEO") and/or otherwise headed and controlled each of the entity
16 Defendants.  In addition to his role as CEO for the entity Defendants, J. Lee was the
17 president and managing member of Biofuel Venture IV, LLC ("BVIV") and Biofuel
18 Venture V, LLC ("BVV"), the president and secretary of American Immigrant
19 Investment Fund I, LLC ("AIIF"), the president of Nexland, Inc. dba Nexland
20 Investment Group ("Nexland"), and the chairman of the board of directors and
21 manager of Nexsun Ethanol, LLC ("Nexsun").  He was a signatory on all bank
22 accounts of each of these entities.  In addition, he was the founder, president and
23 CEO of related entity Kansas Biofuel Regional Center, LLC ("Kansas Biofuel"), and
24 its sole owner and member.  J. Lee was at all relevant times a control person of each
25 of the entity Defendants.

26        9.    **Rebecca Taewon Lee ("R. Lee")**, a Los Angeles resident, is the spouse
27 of J. Lee.  She was the firm administrator of the Law Offices of Lee & Kent.  The
28 accounting staff at Lee & Kent reported to R. Lee, who in turn reported to J. Lee.

EXHIBIT ___1___ PAGE ___23___

1   Together with J. Lee, R. Lee jointly controlled each of the bank accounts of each of

2   the entity Defendants, except for AIIF's bank accounts and one of BVIV's two

3   accounts.  R. Lee was also co-president with J. Lee of Nexland, as well as Nexland's

4   secretary.  Additionally, R. Lee held herself out to USCIS as Nexsun's president.

5       10.   **Thomas Edward Kent ("Kent")**, a resident of Granada Hills,

6   California, was at all relevant times an attorney admitted to the California State Bar.

7   He was disbarred effective August 30, 2014 based on his 2012 misappropriation of

8   client funds in an unrelated matter..  At all relevant times, he was employed at the

9   Law Offices of Lee & Kent.  He was executive vice president and general counsel of

10  Nexsun, and served on its Board of Directors from about 2008 to 2009.  He also acted

11  as Nexland's legal counsel from at least some time in 2010 to August 2011.

12      11.   **American Immigrant Investment Fund I, LLC ("AIIF")**, is a

13  California limited liability company formed on November 24, 2009 by J. Lee, which

14  was at all relevant times headquartered in Los Angeles, California.  In its offering

15  materials, AIIF claimed to offer an EB-5 eligible investment that used investor

16  proceeds to build and operate an ethanol production plant.  It also purported to assist

17  foreign nationals with obtaining immigration benefits through the EB-5 program.  J.

18  Lee was the CEO, president and secretary of AIIF.

19      12.   **Biofuel Venture IV, LLC ("BVIV")**, is a California limited liability

20  company which was at all relevant times headquartered in Los Angeles, California.

21  In its offering materials, BVIV claimed to offer an EB-5 eligible investment that used

22  investor proceeds to build and operate an ethanol production plant.  It also purported

23  to assist foreign nationals with obtaining immigration benefits through the EB-5

24  program.  J. Lee was the CEO, president and managing member of BVIV.

25      13.   **Biofuel Venture V, LLC ("BVV")**, is a California limited liability

26  company which was at all relevant times headquartered in Los Angeles, California.

27  In its offering materials, BVV claimed to offer an EB-5 eligible investment that used

28  investor proceeds to build and operate an ethanol production plant.  It also purported

EXHIBIT ___1___ PAGE _24_

1  to assist foreign nationals with obtaining immigration benefits through the EB-5

2  program. J. Lee was the CEO, president and managing member of BVV.

3      14.    **Nexland, Inc., dba Nexland Investment Group ("Nexland")**, is a

4  California Corporation which was at all relevant times headquartered in Los Angeles,

5  California. Nexland is the managing member of AIIF, BVIV and BVV. J. Lee is the

6  founder, sole owner and co-president with R. Lee of Nexland. R. Lee was also

7  Nexland's secretary. Nexland was incorporated by Kent at Lee's direction, and Kent

8  acted as Nexland's legal counsel from 2010 to August 2011.

9      15.    **Nexsun Ethanol, LLC ("Nexsun")**, is a Kansas limited liability

10  company which was at all relevant times headquartered in Los Angeles, California.

11  Nexsun was created to purportedly operate the ethanol plant in Kansas. At all

12  relevant times, J. Lee was Nexsun's CEO, chairman of the board and managing

13  member. R. Lee also held herself out as Nexsun's president. Kent was executive

14  vice president and general counsel of Nexsun. Kent was also on the board of

15  directors of Nexsun in or about 2008 through 2009.

16  <u>**RELATED ENTITY**</u>

17      16.    **Kansas Biofuel Regional Center, LLC ("Kansas Biofuel")**, is a

18  Kansas limited liability company that was at all relevant times headquartered in Los

19  Angeles, California. J. Lee and Kent prepared the business plan for Kansas Biofuel.

20  On April 17, 2007, the USCIS approved the application of Kansas Biofuel, which

21  was also prepared by J. Lee and Kent, to become a regional center under the EB-5

22  program. At all relevant times, J. Lee was the president and CEO of Kansas Biofuel;

23  Kent was its vice president.

24  <u>**THE FRAUDULENT SCHEME**</u>

25      17.    Defendants' fraudulent scheme was implemented as follows. First, J.

26  Lee and Kent applied to USCIS in 2006 on behalf of Kansas Biofuel for designation

27  as a "regional center." Among other representations, J. Lee and Kent claimed to

28  USCIS that there would be "substantial economic benefit" to the area stemming from

EXHIBIT  1  PAGE 25

1   construction and operation of new ethanol plants by Nexsun, including "thousands"
2   of new jobs.
3        18.    Second, after USCIS approved the designation of Kansas Biofuel as a
4   regional center, J. Lee and Kent created various companies, including entity
5   Defendants AIIF, BVIV and BVV, through which to raise monies from immigrant
6   investors.  The Defendants then proceeded to raise millions of dollars from immigrant
7   investors by representing to them that their monies would be used to construct an
8   ethanol plant in Kansas, and that this investment qualified the investors to obtain
9   residency, and ultimately citizenship, in the United States.
10        19.    In fact, however, the ethanol plant was never built, no jobs were created,
11   and Defendants J. Lee and R. Lee misappropriated and misused most of the $11.5
12   million raised in the offerings described in this action.  In particular, J. Lee and R.
13   Lee spent over one-third of the money raised – almost $3.9 million – to finance an
14   unrelated project in the Philippines to extract iron ore from sand, and another 21% of
15   the monies raised, $2,380,000, to pay off investors in other offerings.  These misuses
16   of investor monies were neither permissible under the EB-5 program nor disclosed to
17   investors.
18        20.    To conceal their fraudulent use of funds and failure to construct the
19   promised ethanol plant and create the jobs contemplated by the EB-5 program, J. Lee
20   and R. Lee caused employees to be hired by Nexsun, but paid them for performing
21   tasks unrelated to construction of the ethanol plant.  As required by USCIS, the
22   Defendants then submitted a Form I-9 to USCIS identifying each employee hired.
23   These forms were required to include basic information, such as the employee's name
24   and address.  Additionally, the Defendants submitted lists of these Nexsun employees
25   to USCIS purporting to show the required creation of jobs; J. Lee, R. Lee and Kent
26   each signed false documents submitted to the USCIS.
27   ///
28   ///

7

A.   **Defendants J. Lee And Kent Applied For And Obtained Designation Of Kansas Biofuel As A Regional Center**

21.   On March 15, 2006, Kansas Biofuel applied to USCIS for designation as a regional center under the Immigrant Investor Program. This area had been designated as a rural TEA by the State of Kansas, which provided a letter to USCIS verifying the area's status attached to Kansas Biofuel's application. The application was signed by J. Lee as President and CEO of Kansas Biofuel. Kent helped J. Lee prepare the application and write the business plan included with the application; Kent also wrote the cover letter to USCIS that was signed by J. Lee.

22.   Kansas Biofuel's application represented, among other things, that:

As a result of the investments [by foreign nationals seeking immigration benefits] facilitated by [Kansas Biofuel], there will be substantial economic benefit to the local and domestic economies stemming from the construction and operation of new ethanol plants, including without limitation, creation of thousands of new jobs and millions of dollars of household income and increased tax revenues.

The application further identifies five "potential ethanol projects" to be constructed within the twenty-one county area. In response to a March 8, 2007, letter request by USCIS for additional evidence supporting its application, Kansas Biofuel further represented to USCIS in a March 21, 2007 letter signed by J. Lee, that "the actual first new commercial enterprise that will be targeted for investment through the proposed regional center will be Nexsun . . . ," and that Nexsun proposed to build an integrated bio-refinery in Grant County, Kansas consisting of separate ethanol and biodiesel production facilities, attaching a copy of Nexsun's purported business plan. The letter further represented that future investments in Nexsun would be made through one or more funding LLCs.

23.   On April 17, 2007, USCIS sent to J. Lee, as president and CEO of Kansas Biofuel, a letter setting forth its approval and designation of Kansas Biofuel

1   as a Regional Center.  The approval letter explicitly stated that the approval and

2   designation was based upon the review and analysis by USCIS of the material

3   provided in support of Kansas Biofuel's March 15, 2006, application and the

4   supplemental information provided by Kansas Biofuel on March 21, 2007.  The

5   USCIS approval letter confirmed, consistent with the application and supplemental

6   information provided to USCIS by J. Lee, Kent and Kansas Biofuel, that the purpose

7   of the Kansas Biofuel Regional Center was:

8          to attract immigrant investor capital that is to be pooled in limited

9          liability corporations (LLCs) that will promote economic growth through

10         investments that focus on the development and operation of fuel grade

11         ethanol production facilities within twenty-one (21) counties located in

12         the southwest region of the State of Kansas.

13  The USCIS approval letter further stated that aliens seeking immigrant visas through

14  the Immigrant Investor Program "may file individual petitions with USCIS for these

15  new commercial enterprises" located within the Kansas Biofuel Regional Center area,

16  and that the minimum capital investment threshold for any individual immigrant

17  investment "shall not be less than $500,000."

18  **B.     The Defendants Defrauded Immigrant Investors Of Millions Of Dollars**

19         **1.     The Defendants Raised $11,455,000, Representing That Investor**

20                **Funds Would Be Used To Construct An Ethanol Plant**

21         24.    From March 2009 to April 2011, the Defendants raised $11,455,000

22  from twenty-four investors through three offerings of LLC units of the following

23  entity Defendants:

24                a.    **AIIF** ($4,740,020 from nine investors from February 2010

25                      through April 2011);

26                b.    **BVIV** ($2,205,000 from six investors from March 2009 through

27                      August 2010); and

28                c.    **BVV** ($4,509,980 from nine investors from April 2010 through

9

EXHIBIT __1__ PAGE __28__

1     January 2011).

2        25.   Defendants J. Lee, Kent, and the relevant issuer Defendant (AIIF, BVIV

3   or BVV) provided offering materials to each investor consisting of: (1) a Confidential

4   Information Memorandum which, in the case of BVIV and BVV, was signed by J.

5   Lee on behalf of Nexland, the managing member of each of the issuers; (2) a

6   Subscription Agreement, or in some cases involving AIIF, an Amended Subscription

7   Agreement, signed by the investor and J. Lee as President of Nexland, the issuer's

8   managing member, and signed by Kent as a "witness" (collectively, "Subscription

9   Agreements"); (3) an Operating Agreement or Amended Operating Agreement

10  between Nexland and the relevant issuer (collectively, "Operating Agreements")

11  signed by J. Lee on behalf of Nexland as the issuer's managing member; (4) an

12  Escrow Agreement signed by J. Lee on behalf of the issuer as its President, and by

13  the investor and a representative of the bank which was acting as escrow agent; and

14  (5) the December 19, 2007 business plan of Nexsun or the plan as "updated" June

15  2010, and the executive summary of the business plan of the relevant issuer signed by

16  J. Lee on behalf of Nexland, each issuer's managing member.

17       26.   J. Lee approved all of the offering materials.  In part because most of the

18  drafters of the documents who were employed by Lee & Kent were not native

19  English speakers, at J. Lee's request, Kent reviewed all of the offering materials, and

20  was thus aware of their content.

21       27.   As set forth below, each of the three investments in units in AIIF, BVIV

22  and BVV, constituted securities in the form of investment contracts because each

23  investment involved: (1) an investment of money; (2) in a common enterprise; (3)

24  with profits to come from the efforts of others.

25            **a.    There Was An Investment Of Money**

26       28.   As set forth in each issuer Defendant's Confidential Information

27  Memorandum and Subscription Agreement, to purchase units of the issuer, the

28  investor was required to invest $500,000, which was solely to be used to make an

EXHIBIT   10 PAGE   29

1   income-generating investment in Nexsun (for the AIIF offering), or to acquire units

2   of ownership in Nexsun (for the BVIV and BVV offerings).  In the case of AIIF, the

3   total amount paid by the investor was $530,000, $500,000 of which constituted the

4   investment, and the remaining $30,000 of which was a fee for administrative and

5   operating expenses.  Similarly, in the case of BVV, the total amount paid by the

6   investor was $505,000, $500,000 of which constituted the investment, and the

7   remaining $5,000 of which was to be retained by BVV as an "administrative fee."

8         **b.**     **The Investment Was In A Common Enterprise**

9        29.    Each issuer Defendant's Confidential Information Memorandum

10  described the issuer as "formed to pool investment monies of foreign nationals

11  seeking certain immigration benefits through the EB5 investment program . . ., which

12  grants lawful permanent resident status in the United States to those who make

13  qualifying investments under the provisions of the relevant immigration law."

14  Similarly, each issuer's Subscription Agreement, including AIIF's Amended

15  Subscription Agreement, explicitly stated that the investor was remitting funds to the

16  issuer "for the specific purpose of obtaining immigration benefits under the EB5

17  investment program."  Ultimately, as set forth above, during the period from March

18  2009 through April 2011, each offering raised several million dollars from several

19  investors, raising a grand total of almost $11.5 million from 24 investors.

20        **c.**     **Profits Were To Be Derived From The Efforts Of Others**

21       30.    Each issuer Defendant's Confidential Information Memorandum further

22  provided that upon approval of the investor's I-526 petition to USCIS for residency,

23  the issuer would utilize $500,000 of the investor's money to either, in the case of

24  AIIF, make a loan/investment to Nexsun, "the proceeds of which will be used to for

25  the development and construction of an ethanol production facility and ancillary

26  businesses in Ulysses, Kansas," or, in the case of BVIV and BVV, "to acquire units

27  of ownership of a new commercial business enterprise known as [Nexsun] … [which

28  was established] in 2006 to develop and operate an integrated bio-fuel refinery" in

EXHIBIT __|__ PAGE 30

1  southwest Kansas.  Similarly, Nexland, through its president J. Lee, explicitly

2  represented in each of the issuer's Subscription Agreements that "this entire

3  [investment] amount [$500,000] will be utilized by [the issuer] for the sole and

4  specific purpose of" in the case of AIIF, "making an income-generating investment in

5  Nexsun," and similarly in the case of BVIV and BVV, "acquiring a membership

6  interest in Nexsun."  Additionally, according to each issuer's Confidential

7  Information Memorandum, the investment was represented as a "qualifying

8  investment" under immigration law because it was: (1) for a minimum of $500,000;

9  (2) in a Target Business in the TEA, which was at least projected to meet the

10  minimum job creation requirements of the Program; and (3) to be subject to an

11  undertaking from the Target Business (Nexsun) to make the best efforts to hire

12  individuals who reside in the TEA.

13      31.     Each issuer's Confidential Information Memorandum and Subscription

14  Agreement provided that in exchange for their investment, the investors would

15  receive a return.  In the case of AIIF, investors would receive an annual dividend of

16  up to 1% of their investment, pro-rated based on the date their investment was

17  released to Nexsun, and semi-annual payments of interest at an annual rate of 2.5%

18  per year, with the investment maturing in five years.  In the case of BVIV and BVV,

19  the Confidential Information Memoranda provided that "profits and losses realized

20  from [the issuer's] investments in Nexsun will be allocated and distributed to the

21  members based on proportionate ownership interest in [the issuer]."

22      32.     Each issuer's Confidential Information Memorandum further

23  represented that the Managing Member of the issuer would be Nexland, and that the

24  day-to-day management of the issuer would be conducted by Nexland.  Indeed, each

25  issuer's Confidential Information Memorandum expressly provides that "Under the

26  provisions of the [issuer's] Operating Agreement, the members of [the issuer] may

27  not take part in the daily management," and further that "daily management

28  decisions, lending decisions, investment decisions, decisions regarding payment of

EXHIBIT  1  PAGE  31

1   distributions and decisions concerning investor withdrawal are within the sole
2   discretion of the Managing Member," Nexland.  Each issuer's Operating Agreement
3   with Nexland contained a similar provision that "the right to exercise the powers of
4   the [issuer] and to manage the business and daily affairs of the [issuer] is vested
5   entirely in the Managing Member [Nexland]."  The Operating Agreements further
6   provided that the President of the issuer – in all cases J. Lee – would be the general
7   manager and chief executive officer of the issuer, and, subject to the control of the
8   managing member, Nexland – of which J. Lee was also President – would have
9   general supervision, direction and control of the issuer's business.

10          33.     After an investor invested, a standard package would be prepared by J.
11  Lee and Kent and sent to USCIS as part of the investor's immigrant visa petition.
12  That package consisted of the offering documents, proof that the investor had paid
13  and the source of the investor's funds to invest, and a cover letter from Kent.

14          34.     The investors' profits were thus to be derived from the efforts of others –
15  the issuer Defendants through their president, J. Lee, and Defendant managing
16  member Nexland, also controlled by J. Lee.

17          **2.     Contrary To The Defendants' Representations, The Ethanol Plant**
18                   **Was Not Built**

19          35.     As set forth above, the offering materials for each of the issuer
20  Defendants represented that investors' monies would be invested in Defendant
21  Nexsun, which was represented to have been established to develop and operate a
22  bio-fuel refinery or ethanol production plant in southwest Kansas.  The version of the
23  Nexsun Business Plan updated in June 2010 explicitly represented that "Major
24  construction work is ongoing and the plant will be in operation before November
25  2011."  Kent also orally represented to investors that their funds would be used to
26  build the Nexsun plant in Kansas.  Additionally, Kent was present at investor
27  seminars from 2008 to 2010 in Los Angeles that  were set up by J. Lee and R. Lee, at
28  which the main part of the presentation was the purported Nexsun ethanol project.  J.

EXHIBIT____|____PAGE 32

1  Lee approved all information that was presented to potential investors at these
2  seminars.

3       36.    In fact, construction was never completed on the plant.  Construction,
4  consisting merely of preliminary work such as grading, installation of a rail spur and
5  construction of a fire lane, ceased in or about mid-2008, well before the Nexsun
6  business plan was "updated" in June 2010.

7       37.    Kent, who reviewed all of the offering materials and was thus aware that
8  they represented that the investors' money would be used to build an ethanol plant,
9  knew that there was no above-ground structure because there was no funding to build
10  it, and that construction had stopped.  In particular, Kent knew the status of the
11  construction of the plant because he was involved in preparing the contracts with the
12  contractors, and he was on site dozens of times and saw the status of construction at
13  the site.  Kent knew that when he left Lee & Kent in August 2011, no plant had been
14  constructed.  He also knew that the sole source of funds for any construction at the
15  site was investor monies, because no bank financing had ever been obtained.

16       38.    J. Lee knew the status of the construction of the plant because he was
17  responsible for approving all of the expenses of the contractors.

18       39.    Both the December 19, 2007 and the updated June 10, 2010 Nexsun
19  Business Plans represented that on October 15, 2007, Nexsun entered into a Plant
20  Management Agreement with Prairie Horizon Agri-Energy, LLC ("PHAE").  The
21  Nexsun Business Plans further represented that pursuant to the agreement, PHAE had
22  been given a five year contract to provide plant management, risk management and
23  marketing services to Nexsun, had made a $2.5 million at risk equity investment in
24  Nexsun and had been given two seats on Nexsun's Board of Directors.  Nexsun's
25  Business Plans also touted the extensive ethanol plant management experience of
26  PHAE's CEO and General Manager, and PHAE's "proven track record for operating
27  ethanol facilities efficiently and profitably."

28       40.    In fact, however, before the Nexsun Business Plan was updated in June

EXHIBIT___l___ PAGE_33_

1  2010, Kent had signed a Mutual Termination of Plant Operation Agreement effective
2  as of September 12, 2008, on behalf of Nexsun, under which Nexsun gave PHAE
3  $2,250,000 as a full refund of its management services and investment in the ethanol
4  project.  The subsequently drafted June 2010 "updated" Nexsun Business Plan
5  nevertheless represented that PHAE had a substantial role and investment in the
6  project, and was disseminated to investors as late as April 2011.

7       41.    Kent visited the construction site frequently in 2008 and 2009, when no
8  construction was taking place.  In particular, Kent and R. Lee attended  meetings on
9  behalf of Nexsun with the Grant County Economic Development Corporation
10  ("GCEDC") which took place in Ulysses, Kansas on or about March 11, 2009.  At the
11  meetings at which Kent and R. Lee were present, it was discussed that the ethanol
12  plant was not economically feasible at that point in time.

13       42.    In about 2011, J. Lee ordered the removal of the construction trailer
14  from the site because he did not want to continue to pay for its rental.

15       43.    J. Lee and Kent nevertheless failed to stop distribution to investors of the
16  version of the Nexsun business plan updated in June 2010, knowing that the
17  representation that the construction was "ongoing" and that plant would be in
18  operation before November 2011 was false because construction had ceased, and
19  because construction of an ethanol plant was no longer economically feasible.

20       **3.    The Defendants Provided USCIS Misleading Documentation**
21            **Purporting To Show Job Creation By Nexsun**

22       44.    For Kansas Biofuel to retain its USCIS EB-5 regional center status, the
23  Defendants were required to show that Nexsun had created permanent full-time jobs.
24  If Kansas Biofuel lost its EB-5 regional center status, investors would not be able to
25  seek permanent resident status in exchange for investing in the Nexsun project.
26  Because the Nexsun ethanol plant was never constructed, no such permanent full-
27  time jobs relating to the plant were ever created.

28       45.    Nexsun nevertheless recruited employees.  Each new employee recruited

EXHIBIT____ PAGE 39

1   by Nexsun was provided a USCIS Form I-9, Employment Eligibility Verification.

2   Either an office assistant working for the Defendants in Kansas or the employee

3   would complete Sections 1 and 2 of the form, providing the employee name, address,

4   and other personal information, and listing a type of employee identification (such as

5   a Driver's License), and the employee would sign the form.  The office assistant

6   would then fax the form to Nexsun in Los Angeles for certification by R. Lee as

7   President of Nexsun.

8       46.    In 2010 and 2011, the Defendants submitted Form I-829 packages to

9   USCIS petitioning for removal of the conditions on specific investors' residency in

10  the United States.  The purportedly verified I-9s, as well as the employee lists, were

11  included in the Form I-829 packages, and/or as part of responses by Nexsun to

12  USCIS Requests for Additional Evidence supporting specific I-829 petitions

13  ("RFE").  Kent wrote and signed the cover letters for the Form I-829 packages, and

14  R. Lee participated in preparation of the I-9 forms and other documentation included

15  in the packages.  Kent reviewed the Form I-829 packages before they were submitted

16  to the USCIS.

17      47.    In response to Forms I-829 submitted by the Defendants, USCIS stated

18  in various 2010 and 2011 RFEs that the petitioning investor was required to provide

19  evidence of direct job creation for the operation of the ethanol plant or documented

20  proof of the completion of the ethanol plant and the hiring of qualifying employees

21  within the required two year residency period, among other evidence.

22      48.    Nexsun employee lists, including lists dated as of February 9, 2010 and

23  as of August 31, 2010, were included in submissions made by the Defendants in

24  response to USCIS RFEs.  The employee lists submitted to USCIS were misleading

25  because, among other things, they were submitted well after Kent and R. Lee became

26  aware that construction of the Nexsun ethanol plant had ceased.  The lists were

27  further misleading because they listed R. Lee and Kent's wife as full-time Nexsun

28  employees without disclosing they lived in California rather than in the Kansas TEA,

16

EXHIBIT ___ PAGE 35

1   and the February 9 and August 31, 2010 lists described Kent's wife's position as

2   "Accountant," when she performed at most clerical functions for Nexsun.

3        49.    The responses to the USCIS RFEs also included materially false and

4   misleading letters signed by Kent and by R. Lee as president of Nexsun.  In his letters

5   included with 2010 and 2011 RFE submissions, Kent falsely represented that either

6   twenty-one or twenty-six "full time direct jobs" were created by Nexsun as of the

7   date of the investor's I-829 petition, depending upon whether the included Nexsun

8   employee list was dated as of February 9 or as of August 31, 2010.  In response to

9   USCIS inquiries concerning the fact that the ethanol plant had not yet been built,

10   Kent also falsely represented that:

11         Despite being confronted with challenging economic conditions and

12         delays beyond its control, the evidence presented demonstrates that

13         construction of Nexsun's refinery is substantially underway and moving

14         towards successful completion. . . .  Petitioner currently expects that

15         construction will be complete and commercial operations will commence

16         by the first quarter of 2012. . . .  Nexsun's hiring process is continuing as

17         are its capital expenditures.  As such additional direct jobs and literally

18         hundreds of indirect jobs will be created in the very near future as the

19         project reaches completion.

20   Kent made these statements knowing that construction ceased in mid-2008 and had

21   not resumed, and that no one on the employee list was performing tasks involving the

22   nonexistent Nexsun ethanol plant.

23        50.    In her letters included with 2010 and 2011 RFE submissions, R. Lee

24   falsely represented that "economic conditions" had made it difficult for Nexsun to

25   raise capital, but that Nexsun still intended to construct a 40 million gallon per year

26   fuel grade ethanol production facility in Grant County, Kansas, and had not

27   abandoned the project.  Like Kent, R. Lee further falsely represented that

28   "construction is substantially underway," and that Nexsun expected that construction

EXHIBIT _____ 1 _____ PAGE 36

1 would be completed and commercial operations would commence by the first quarter

2 of 2012, when she was aware that these facts were untrue.

3     51.    No one who J. Lee and/or R. Lee caused to receive a Nexsun paycheck

4 was hired to perform any task related to any ethanol plant, because that plant never

5 existed.

6     **4.**    **The Defendants Misappropriated And Misused Investor Funds**

7     52.    J. Lee had ultimate authority over how the investor monies raised for the

8 Nexsun project were used.  Construction budgets were presented to J. Lee by Kent,

9 who received them from various vendors.  J. Lee would either approve the budget or

10 instruct his subordinates to make a counteroffer.  J. Lee had authority to approve

11 Nexsun's expenses; R. Lee also approved expenses, after consulting with J. Lee.  J.

12 Lee was a signatory on all bank accounts of every entity Defendant.

13     53.    R. Lee signed all checks that  were not signed by J. Lee.  R. Lee was a

14 signatory, together with J. Lee, for the bank accounts of Defendants BVV, Nexland

15 and Nexsun, and one of BVIV's two accounts.

16     54.    Kent also had knowledge of Nexsun's expenditures, as he reviewed

17 Nexsun's financial books and records to ensure Nexsun was not being overbilled on

18 the construction contracts, and those records show that payments to contractors ended

19 in December 2008.

20     55.    J. Lee and R. Lee misappropriated and misused at least $7,210,000, or

21 62.94%, of the $11,455,000 raised from investors in the AIIF, BVIV and BVV

22 offerings.  Specifically:

23         a.    J. Lee and R. Lee used $3,895,000, or 34%, of the investor funds

24                 to finance a project in the Philippines to extract iron ore from

25                 sand.

26         b.    J. Lee and R. Lee paid $2,380,000, or 20.78%, of the investor

27                 funds to investors in other offerings who demanded their money

28                 back.

EXHIBIT __I__ PAGE _37_

1          c.     J. Lee and R. Lee misappropriated and misused at least an

2                  additional $760,000 by sending it to other entities they owned and

3                  controlled for purposes unrelated to the investment in AIIF, BVIV

4                  or BVV.

5       56.   The misuse of funds included J. Lee taking money out of investor

6    escrow accounts without their knowledge prior to the approval of the investor's I-526

7    application for residency when J. Lee was running low on cash and having difficulty

8    obtaining financing.  J. Lee did so notwithstanding he knew he was acting as a

9    fiduciary for the investors, other attorneys in his firm advised him that he did not

10   have the power to make such withdrawals, and the offering documents he drafted,

11   including the Confidential Information Memoranda, Subscription Agreements and

12   Escrow Agreements, did not allow J. Lee to make such withdrawals.  Kent was aware

13   of this misuse of funds by J. Lee, but Kent nevertheless failed to inform investors of

14   the misuse of their monies, and participated in making the offerings until at least

15   April 2011.

16                      **FIRST CLAIM FOR RELIEF**

17              **Fraud in the Offer or Sale of Securities**

18           **Violations of Section 17(a) of the Securities Act**

19                   **(against all Defendants)**

20      57.   The SEC realleges and incorporates by reference paragraphs 1 through

21   56 above.

22      58.   The Defendants, by engaging in the conduct described above, directly or

23   indirectly, in the offer or sale of securities by the use of means or instruments of

24   transportation or communication in interstate commerce or by use of the mails:

25         a.     with scienter, employed devices, schemes, or artifices to defraud;

26         b.     obtained money or property by means of untrue statements of a

27                 material fact or by omitting to state a material fact necessary in

28                 order to make the statements made, in light of the circumstances

EXHIBIT____1____ PAGE 38

1     under which they were made, not misleading; or

2          c.     engaged in transactions, practices, or courses of business which

3                 operated or would operate as a fraud or deceit upon the purchaser.

4     59.    By engaging in the conduct described above, the Defendants violated,

5     and unless restrained and enjoined will continue to violate, Section 17(a) of the

6     Securities Act, 15 U.S.C. § 77q(a).

7     **SECOND CLAIM FOR RELIEF**

8     **Fraud in Connection with the Purchase or Sale of Securities**

9     **Violations of Section 10(b) of the Exchange Act**

10    **and Rules 10b-5(a) and 10b-5(c) Thereunder**

11    **(against all Defendants as primary violators, and, alternatively,**

12    **against J. Lee as a control person under Section 20(a) of the Exchange Act)**

13    60.    The SEC realleges and incorporates by reference paragraphs 1 through

14    56 above.

15    61.    The Defendants, by engaging in the conduct described above, directly or

16    indirectly, in connection with the purchase or sale of a security, by the use of means

17    or instrumentalities of interstate commerce, of the mails, or of the facilities of a

18    national securities exchange, with scienter:

19         a.     employed devices, schemes, or artifices to defraud; or

20         b.     engaged in acts, practices, or courses of business which operated or

21                would operate as a fraud or deceit upon other persons.

22    62.    By engaging in the conduct described above, the Defendants violated,

23    and unless restrained and enjoined will continue to violate, Section 10(b) of the

24    Exchange Act, 15 U.S.C. § 78j(b), and Rules 10b-5(a) and (c) thereunder, 17 C.F.R.

25    §§ 240.10b-5(a) & 240.10b-5(c).

26    63.    Defendant J. Lee was a control person of Defendants AIIF, BVIV, BVV,

27    Nexland and Nexsun because he possessed, directly or indirectly, the power to direct

28    or cause the direction of the management and policies of each of these entities.

20

EXHIBIT____1____ PAGE 39

1   Accordingly, pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a),

2   Defendant J. Lee is liable to the SEC to same extent as each of the entity Defendants

3   for those Defendants' violations of Section 10(b) and Rules 10b-5(a) and (c)

4   thereunder.

5                           **THIRD CLAIM FOR RELIEF**

6             **Fraud in Connection with the Purchase or Sale of Securities**

7               **Violations of Section 10(b) of the Exchange Act**

8                      **and Rule 10b-5(b) Thereunder**

9   **(against Defendants J. Lee, Kent, AIIF, BVIV, BVV, Nexland and Nexsun as**

10  **primary violators, and, alternatively, against J. Lee as a control person under**

11                  **Section 20(a) of the Exchange Act)**

12         64.   The SEC realleges and incorporates by reference paragraphs 1 through

13  56 above.

14         65.   Defendants J. Lee, Kent, AIIF, BVIV, BVV, Nexland and Nexsun, by

15  engaging in the conduct described above, directly or indirectly, in connection with the

16  purchase or sale of a security, by the use of means or instrumentalities of interstate

17  commerce, of the mails, or of the facilities of a national securities exchange, with

18  scienter, made untrue statements of a material fact or omitted to state a material fact

19  necessary in order to make the statements made, in the light of the circumstances

20  under which they were made, not misleading.

21         66.   By engaging in the conduct described above, Defendants J. Lee, Kent,

22  AIIF, BVIV, BVV, Nexland and Nexsun violated, and unless restrained and enjoined

23  will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and

24  Rule 10b-5(b) thereunder, 17 C.F.R. § 240.10b-5(b).

25         67.   Defendant J. Lee was a control person of Defendants AIIF, BVIV, BVV,

26  Nexland and Nexsun because he possessed, directly or indirectly, the power to direct

27  or cause the direction of the management and policies of each of these entities.

28  Accordingly, pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a),

EXHIBIT ___|___ PAGE 40

1  Defendant J. Lee is liable to the SEC to same extent as each of the entity Defendants

2  for those Defendants' violations of Section 10(b) and Rule 10b-5(b) thereunder.

3  **PRAYER FOR RELIEF**

4  WHEREFORE, the SEC respectfully requests that the Court:

5  **I.**

6  Issue findings of fact and conclusions of law that Defendants committed the

7  alleged violations.

8  **II.**

9  Issue a judgment, in a form consistent with Fed. R. Civ. P. 65(d), permanently

10  enjoining Defendants and their officers, agents, servants, employees and attorneys,

11  and those persons in active concert or participation with any of them, who receive

12  actual notice of the judgment by personal service or otherwise, from violating Section

13  17(a) of the Securities Act, 15 U.S.C. § 77q(a); and Section 10(b) of the Exchange

14  Act, 15 U.S.C. § 78j(b), and Rule10b-5 thereunder, 17 C.F.R. §§ 240.10b-5.

15  **III.**

16  Order Defendants to disgorge all ill-gotten gains from their illegal conduct,

17  together with prejudgment interest.

18  **IV.**

19  Order Defendants to pay civil penalties under Section 20(d) of the Securities

20  Act, 15 U.S.C. § 77t(d), and Section 21(d)(3) of the Exchange Act, 15 U.S.C. §

21  78u(d)(3).

22  **V.**

23  Retain jurisdiction of this action in accordance with the principles of equity and

24  the Federal Rules of Civil Procedure in order to implement and carry out the terms of

25  all orders and decrees that may be entered, or to entertain any suitable application or

26  motion for additional relief within the jurisdiction of this Court.

27  ///

28  ///

EXHIBIT___1___PAGE_41

# VI.

Grant such other and further relief as this Court may determine to be just and necessary.

Dated: September 3, 2014

                                        /s/ Karen Matteson
                                        Karen Matteson
                                        Attorney for Plaintiff
                                        Securities and Exchange Commission

EXHIBIT   1   PAGE 42

1  KAREN MATTESON (Cal. Bar No. 102103)
Email: mattesonk@sec.gov
2  CAROL W. LALLY (Cal. Bar No. 226392)
Email: lallyc@sec.gov
3  공정증권거래위원회 검사들
4  Michele Wein Layne, 지부장
5  Lorraine Echavarria, 부지부장
John W. Berry, 지부 재판 자문
6  5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036
7  전화: (323) 965-3998
팩스: (323) 965-3908
8
9            미합중국 지방법원
10          캘리포니아 중앙 지구
11
12
13  증권거래위원회,                      케이스 번호. 2:14-cv-06865
14          원고,                      고소
15
16       대.
17  저스틴 이문규;
레베카 이태원;
18  토마스 에드워드 켄트;
AMERICAN IMMIGRANT
19  INVESTMENT FUND I, LLC;
BIOFUEL VENTURE IV, LLC;
20  BIOFUEL VENTURE V, LLC;
NEXLAND, INC., dba NEXLAND
21  INVESTMENT GROUP; and
NEXSUN ETHANOL, LLC,
22
23          피고들.
24
25     원고 증권거래위원회("SEC")가 주장하다:
26            관할권 및 재판지
27
28  1. 동 법원은 아래 법에 준하여 관활권을 지닌다. 1933

EXHIBIT __1__ PAGE __43__

1 증권법("증권법"), 15 U.S.C. §§ 77t(b), 77t(d)(1) & 77v(a), 항 20(b), 20(d)(1) 과 22(a),

2 그리고 1934 년 증권거래법 ("거래법"), 15 U.S.C. §§ 78u(d)(1), 78u(d)(3)(A), 78u(e) &

3 78aa(a), 항 21(d)(1), 21(d)(3)(A), 21(e) 및 27(a)에 준함. 왜냐하면 피고들은, 직접적 혹은

4 간접적으로, 주 간의 상거래의 수단과 방편을, 우편물을, 혹은 국내 증권 거래의 시설물을

5 이 고소가 주장하는 바의 상거래, 활동, 실행, 사업 경영에 사용했기 때문이다.

6   2.   재판지는 증권법, 15 U.S.C. §§ 77v(a), 항 22(a), 그리고 15 U.S.C. § 78aa(a),

7 27(a) 항에 준해서, 이 지역이 적절하다. 왜냐하면 전체 해당 기간에 각 개별적

8 피고들이 이 지역에 거주했고, 피고 업체의 본부가 이 지역에 있었으며,

9 연방증권법에 위반되는 상거래, 활동, 실행, 행위가 이 지역에서 이루어졌기

10 때문이다.

11 <u>**개요**</u>

12   3. 이 케이스는 두 명의 이민 변호사들, 피고 저스틴 이문규 ("J. Lee")와

13   그의 법률 동업자인 피고 토마스 에드워드 켄트 ("켄트"), 그리고 J. Lee 의

14   배우자, 피고 레베카 이태원 ("R. Lee")이 저지른 책략과 관계있다. J. Lee,

15   켄트, 그리고 R. Lee 는 중국인과 한국인 투자가들에게 그들의 돈이

16   미합중국의 EB-5 비자 프로그램에서 요구하는 요구조건에 적격한

17   프로그램에 투자 될 것이라고 하여 사기를 쳤다. 이 프로그램은

18   미합중국 이민청("미이민청")이 주관하며, 투자 이민자에게 2 년의

19   기간동안 조건부 거주 신분을 제공하며, 그 이후 동 프로그램이

20   요구하는 조건들에 부합할 경우 영주권을 부여한다. 특별히, 피고들은

21   제안된 투자가 EB-5 에 적격하며, 모아진 돈은 캔사스에 에타놀 생산

22   공장을 건설하고 운영하는데 사용될 것이라고 하였다.

23   4. EB-5 프로그램 아래, 미국에 "상업용 사업"에 자본을 투자하는 이민자는

24   미이민청에 2 년의 기간 동안 조건부 거주를 신청할 수 있고 그리고 받을

2

EXHIBIT __1__ PAGE 44

1      수 있다. 그 이민자는 적어도 5 십만 달러를 "특정 고용 지역" ("TEA") 에

2      투자하고 그로서 적어도 10 명의 미국 노동자의 풀타임 일자리를

3      창출해야만 한다. 만약 이민자가 2 년 기한 내에 이와 여타 다른 조건들을

4      충족시키면, 그때는 그 이민자는 미이민청에 영주권을 신청할 수 있다.

5      5.  TEA 내에 투자 유치 및 일자리 창출을 위해, EB-5 프로그램은 업체가

6      승인된 "지역 센터"로 되는 것을 미이민청에 신청할 것을 허용한다. 지역

7      센터가 되기 위해서는, 업체는 일자리 창출을 포함해서 어떻게 경제를 활성시킬

8      것인지를, 경제적 통계적 연구 자료의 지지를 받아, 증명해 보여야 한다.   이

9      케이스에서, 아래 설명한대로, J.Lee 와 Kent 는 2006 년에 미이민청에 캔사스

10     바이오퓨엘 지역센터 유한책임회사를 대신하여 "지역센터"로서 캔사스

11     바이오퓨엘을 지정하여 신청했다.   다른 주장들과 함께, J. Lee 와 켄트는 새

12     에타놀 공장을 건축하고 운영함으로써 "수천의" 새 일자리를 포함해 그 지역에

13     "확실한 경제적 이익"을 부여하게 될 것이라고 미이민청에 주장했다.

14     6.  2009 년 3 월부터 2011 년 4 월까지, 피고들은, 1 천 1 백 4 십 5 만 5 천 달러를,

15     스물 네명의 투자가들로부터, 피고 넥션 에타놀 유한책임회사가 캔사스에

16     에타놀 공장을 건설한다는 요지의 세개의 제안을 통해 조달했다. 약속대로 돈을

17     투자하기보다는 – 그리고 투자가가 거주권을 취득하기 위해 요구되어 지는대로

18     -  피고들은 적어도 7 백2십 1 만달러, 혹은 거둔 총액의 62.94 퍼센트를 착용했다.

19     다른 오용 중에는, 피고들이 투자들 돈의 삼분의 일이 넘는,

20     3 백 8 십 9 만 5 천달러를 착용하고, 이 돈을 필리핀에서 모래로부터 철광석을

21     추출하는 상관없는 프로젝트에 오용했다; 그리고 투자가들의 돈 중 추가로

22     2 백 3 십 8 만달러를 다른 제안에서 투자가들의 원금을 환불하는데 착용하고

23     오용했다.   피고들이 그 자금이 건축비에 쓰여질 것이라고 투자가들에게 말한,

24     EB-5 에 합당하는 캔사스의 에타놀 생산 공장은, 사실상, 전혀 건축되지 않았다.

25     J. Lee, 켄트, R. Lee 는 여럿의 업체를 통하여 이런 사기를 쳐왔다.   이 업체들도

26     역시 피고로 명명돼 졌다.

EXHIBIT___1___PAGE 46

1    7.  이 같은 행위를 함으로써, 피고들은 증권법, 15 U.S.C. § 77q(a) 의 17(a) 항의

2   반사기 조항,  거래법, 15 U.S.C. § 78j(b)  의 10(b) 항과, 그리고 그 부속 10b-5(a)

3   와 (c) 그리고 17 C.F.R.240.10b-5(a) & 240.10b-5(c) 를 위반했다. 그리고 J. Lee 가

4   각각 피고 업체의 콘트롤 하는 사람으로서 번갈아가며 10b-5 를 위반하여, J. Lee,

5   켄트,  및 피고 업체들은  거래법 조례 10b-5(b), 17 C.F.R. § 240.10b-5(b) 를

6   추가로 위반했다.

7

8

9                           **피고들**

10   8.  저스틴 이문규 (**"J. Lee"**), 로스앤젤레스 거주자, 는 전체 해당 기간 동안

11   그에 반한 이 고소에서 주장하는 사기와 관련하여 징계 조치가 진행중인 동안

12   회원비를 내지 않음으로써 정지가 되기 전까지인 2014 년 7 월 1 일까지

13   변호사였고 캘리포니아 주 법조계의 회원이었다.  전체 해당 기간 동안,

14   캘리포니아 로스앤젤레스에서 피고 켄트와 함께 리 앤 켄트 법률사무소를

15   유지하였고, 또한  미이민청, 켄트, 그리고 투자가들에게 자신을 공인회계사로서

16   내세웠다. J. Lee 는 피고 업체 전부를 각기 설립하고, 최고경영인 (CEO)

17   이고/이거나 혹은 우두머리로 콘트롤 했다. 피고 업체들의 CEO 로서의 그의

18   역할에 더하여,  J. Lee 는 바이오퓨엘 벤처 유한책임회사 IV ("BVIV") 와

19   바이오퓨엘 벤처 유한책임회사 V ("BVV") 의 사장이자 관리 멤버였고, 미국 이민

20   투자 기금 I 유한책임회사 ("AIIF") 의 사장이자 비서였고, 넥스랜드 투자

21   그룹으로 사업하는 넥스랜드 주식회사 ("넥스랜드") 의 사장, 그리고  넥션

22   에타놀 유한회사 ("넥션") 의 이사장이자 메니저였다. 그는 이들 각 업체의 모든

23   은행구좌의 서명인이었다. 그에 더해서, 그는  캔사스 바이오퓨엘 지역 센터

24   유한회사("캔사스 바이오퓨엘")와 관련된 업체의 설립자, 사장이자

25   최고경영인이었으며, 단독 소유자고 멤버였다. J. Lee 는 이 모든 해당 기간 동안

26   각 피고 업체들의 지배자였다.

EXHIBIT____I____PAGE 46

1      9. **레베카 이태원 ("R. Lee")**, 로스앤젤레스 거주자, 은 J. Lee 의 배우자이다.

2   그녀는 리 앤 켄트 법률사무소의 사무 행정인이었다. 리 앤 켄트 의 회계

3   직원은 R. Lee 에게 보고를 했고, 그녀는 이를 J. Lee 에게 보고했다.

4   J. Lee 와 함께, R. Lee 는 AIIF 의 은행 구좌와 BVIV 의 두 은행구좌 중 하나를

5   제하고는, 모든 피고 업체들의 각각의 은행구좌들을 콘트롤 했다. R. Lee 는 또한 J.

6   Lee 와 함께 넥스랜드의 공동 사장이었으며,   넥스랜드의 비서였다. 추가로, R.

7   Lee 는 미이민청에 넥션의 사장으로 자신을 내세웠다.

8      10. **토마스 에드워드 켄트 ("켄트")**, 캘리포니아 그라나다 힐스 거주자, 는

9   전체 해당 기간 동안 캘리포니아 주 법조계에 허가된 변호사였다.   이 사건과

10   무관한 고객의 자금을 착용했다는 것을 근거로 그는 2014 년 8 월 30 일자

11   효력으로 변호사 자격을 발탈당했다.   이 모든 해당 기간 동안, 그는 리 앤

12   켄트 법률회사에서 일했다.   그는 넥션의 경영 부사장이고 법무 자문위원이었고,

13   그리고 대략 2008 년부터 2009 년까지   그의 이사회의 이사로 일했다. 그는 또한

14   적어도   2010 년의 어느 때 부터 2011 년 8 월 까지 넥스랜드의 법률 자문이었다.

15      11. **미국 이민 투자 기금 I 유한책임회사 ("AIIF")** 는 J. Lee 가 2009 년 11 월

16   24 일에 형성한 캘리포니아의 유한 책임 회사이며, 전체 해당 기간 동안

17   캘리포니아 로스앤젤레스에 그 본부를 두었다. 이것의 제안 자료에는, AIIF 가

18   EB-5 에 적격하는 에타놀 생산 공장을 짓고 운영하는 투자에 투자 수익금을

19   사용한다고 주장하고 있다.   이것은 또한   외국인이   EB-5 프로그램을 통해서

20   이민 혜택을 취득하는 것을 돕는다고 하였다.   J. Lee 는 AIIF 의 최고경영인이며,

21   사장이고 비서였다.

22      12. **바이오퓨엘 벤쳐 IV 유한회사 ("BVIV")** 는 캘리포니아 로스앤젤레스에

23   전체 해당 기간 동안에 본부를 둔 캘리포니아 유한 책임 회사이다. 이것의 오퍼

24   자료에는 BVIV 가 에타놀 공장을 짓고 운영하는데 투자 수익금을 적용하여

25   EB-5 에 적격인 투자를 한다고 주장하였다. 이것은 또한   외국인이   EB-5

26   프로그램을 통해서 이민 혜택을 취득하는 것을 돕는다고 하였다.   J. Lee 는

27   BVIV 의 최고경영인이며, 사장이며, 운영 멤버 였다.

5

1    13. **바이오퓨엘 벤처 V 유한책임회사 ("BVV")** 는 캘리포니아 로스앤젤레스에

2    전체 해당 기간 동안에 본부를 둔 캘리포니아의 유한책임 회사이다. 이것의

3    제안 자료에서, BVV 는 에타놀 공장을 짓고 운영하는데 투자 수익금을 적용하여

4    EB-5 에 적격인 투자를 한다고 주장하였다. 이것은 또한  외국인이  EB-5

5    프로그램을 통해서 이민 혜택을 취득하는 것을 돕는다고 하였다.   J. Lee 는

6    BVV 의 최고경영인이며, 사장이며, 운영 멤버 였다.

7    14. **넥스랜드 주식회사, 넥스랜드 투자 그룹 ("넥스랜드")** 으로 운영된 이

8    주식회사는 캘리포니아 로스앤젤레스에 이 모든 해당 기간 동안에 본부를

9    두었던 캘리포니아의 주식회사의 하나이다. 넥스랜드는  AIIF, BVIV 와  BIV 의

10   운영 멤버이다.   J. Lee 는 넥스랜드의 창립자이고, 단독 소유자며, R. Lee 와 함께

11   넥스랜드의 공동 사장이다. R. Lee 는 또한 넥스랜드의 비서였다. 넥스랜드는

12   Lee 의 지휘 아래   켄트와 주식회사로 되었고, 켄트는 2010 년부터 2011 년 8 월

13   까지 넥스랜드의 법률고문으로 활동했다.

14   15. **넥선 네타놀 유한책임회사 ("넥선")** 는 캘리포니아 로스앤젤레스에 이

15   모든 해당 기간 동안에 본부를 둔 캔사스의 유한 책임 회사의 하나이다. 넥선은

16   캔사스에 에타놀 공장을 운영한다는 주장으로 만들어졌다. 전체 해당 기간

17   동안에, J. Lee 는 넥선의 이사장이자 운영 멤버였다. R. Lee 역시도 넥선의

18   사장으로 자신을 내세웠다. 켄트는 넥선의 최고 경영 부사장이자 법무 자문

19   위원이었다. 켄트 역시도 대략 2008 년경부터 2009 년까지 넥선의 이사를

20   역임했다.

21   ## 관련 업체들

22   16. **캔사스 바이오퓨엘 지역 센터 유한책임회사 ("캔사스 바이오퓨엘")** 는

23   캘리포니아 로스앤젤레스에 전체 해당 기간 동안에 본부를 둔 캔사스의 유한

24   책임 회사의 하나이다.   J. Lee 와 켄트가 캔사스 바이오퓨엘을 위해 사업 계획을

25   준비했다. 2007 년 4 월 17 일에,  미노동청이 EB-5 프로그램 하에 캔사스

26   바이오퓨엘이 지역 센터가 되기 위한 캔사스 바이오퓨엘의 원서를 승인했다. 이

1   원서 또한 J. Lee 와 켄트가 준비한 것이었다. 전체 해당 기간 동안,  J. Lee 가

2   캔사스 바이오퓨엘의 사장이며 최고경영인이었다; 켄트는 이의 부사장이었다.

3

## 사기 책략

5       17. 피고들의 사기 책략은 다음과 같이 수행됐다. 첫째,  J. Lee 와 켄트가

6   2006 년에 캔사스 바이오퓨엘을 대신해서 "지역 센터"로 지정해줄 것을

7   미노동청에 신청했다. 다른 주장들과 함께,  J. Lee 와 켄트는 넥선이 새로운

8   에타놀 공장을 신축하고 운영함으로써,  "수천에 달하는" 새 일자리 창출을

9   포함해서, "확실한 경제적인 혜택"을 그 지역에 부여할 것이라고 미노동청에

10  주장했다.

11      18. 둘째, 미노동청이 캔사스 바이오퓨엘을 지역 센터로 지정해줄 것을

12  승인한 후, J. Lee 와 켄트는 피고 업체들인 AIIF, BVIV, BVV 를 포함한 여러 회사를

13  만들었고, 그 회사들을 통해서, 이민 투자가들로부터 돈을 수거했다. 피고들은

14  캔사스에 에타놀 공장을 건축하는데 그들의 돈이 쓰일 것이며,  그리고 이

15  투자는 투자가가 거주권을, 궁극적으로는 미합중국의 시민권을, 취득하는 자격이

16  된다고 이민 투자가들에게 말함으로써 수백만 달러를 이민 투자가들로부터

17  모금하는 작업을 진행했다.

18      19. 사실상, 그러나, 에타놀 공장은 건설된 적이 없고, 일자리도 창출되지

19  않았고, 그리고 피고 J. Lee 와 R. Lee 는 이 고소에서 설명한 대로의 오퍼로써

20  거둬진 1 천 1 백 5 십만 달러의 대부분을 착용했고 오용했다. 특히,  J. Lee 와  R.

21  Lee 는 모금된 금액의 삼분의 일 이상 –거의 3 백 9 십만 달러-을  필리핀에서

22  모래로부터 철광석을 추출하는, 무관계한 프로젝트에 융통해 썼다. 그리고

23  수거된 금액의 21 퍼센트인 2 백 3 십 8 만달러를  다른 제안에서 투자가들에게

24  지불하는데 썼다. 투자가들의 돈을 이같이 오용한 것은 EB-5 프로그램 아래

25  허용되지 않을 뿐 아니라 투자가들에게 알려지지도 않았다.

EXHIBIT____ PAGE 49

1    20. 자금의 사기적 사용 및 EB-5 프로그램에서 숙고된 약속한 에타놀 공장과

2    일자리 창출의 실패를 감추기 위해, J. Lee 와 R. Lee 는 넥선이 직원들을 고용하게

3    했지만, 에타놀 공장 건축과는 무관한 일들을 수행한 데 대하여 직원에게

4    지불했다. 그런 후 피고들은, 미이민청의 요구규정에 따라, 고용한 각

5    피고용인을 확인하는  I-9 양식을 미이민청에 제출했다. 이런 양식들은

6    피고용인의 이름과 주소와 같은, 기본적인 정보가 포함될 것이 요구된다. 추가로,

7    피고들은 요구된 일자리 창출을 내보이기 위해 넥선의 직원들의 명단을

8    미이민청에 제출했다;  J. Lee, R. Lee 와 켄트는 각각 허위 서류에 서명하여

9    미이민청에 제출했다.

10

11        A. 피고 J. Lee 와 켄트는 캔사스 바이오퓨엘을 지역 센터로서

12            지정해줄 것을 신청했고 허가받았다.

13    21. 2006 년 3 월 15 일, 캔사스 바이오퓨엘은 미노동청에 이민 투자

14    프로그램의 일환으로 지역 센터로 지정해줄 것을 신청했다.  이 지역은  캔사스

15    주에 의해 시골의 TEA 로 지정돼 있었고, 캔사스 주는  캔사스 바이오퓨엘의

16    신청서에 첨부되는 지역 상태를 확인하는 편지를 미노동청에 제공했다.   이

17    신청서는  캔사스 바이오퓨엘의 사장이며 최고경영인으로서 J. Lee 가 서명했다.

18    켄트는 신청서를 준비하고 신청서에 포함될 사업계획을 작성하는데 J. Lee 를

19    도왔다; 켄트는 또한 J. Lee 가 서명한 미이민청에 보내는편지 앞장을 작성했다.

20    22. 캔사스 바이오퓨엘의 신청서는, 다른 주장과 함께, 주장했다: [캔사스

21        바이오퓨엘] 에 의하여 이뤄진, [이민 혜택을 구하는 외국인에 의한]

22        투자의 결과의 하나로써, 그 지역의 지역 경제에 새 에타놀 공장들의

23        건축과 운영으로 야기된, 수천에 달하는 새 일자리 창출과 수백만에

24        이르는 가정 소득과 그리고 증가된 세금자원에 국한되지 않는, 확실한

25        경제적 혜택이 주어지게 것이다.

26    이 신청서는 더 나아가 스물 하나의 카운티 지역에 건설할 다섯개의

27    "가능성있는 에타놀 프로젝트"를 밝혔다.  이 신청서를 후원하는 추가 자료를

8

1  요구한, 2007 년 3 월 8 일 자의  미노동청의 편지에 준응하여, 캔사스
2  바이오퓨엘은  J. Lee 가 서명한 2007 년 3 월 21 일자의 편지에서 미노동청에
3  다음처럼 말했다. " 제의된 지역 센터를 통하여 투자를 목적할 실체적인 첫 상용
4  사업은  넥선일 것이다...," 그리고 캔사스 그랜트 카운티에 별도로 에타놀과
5  바이오디젤의 생산 체제로 구성되는 통합적인 바이오-정련장을 짓는 것을 제의
6  한다고  넥선의 사업계획의 사본을 첨부하여 알렸다.  이 편지는 더 나아가
7  넥선의 장차 투자가  하나 혹은 그 이상의 자금 유한책임회사를 통하여 이뤄질
8  것이라고 했다.

9    23. 2007 년 4 월 17 일에, 미노동청은 캔사스 바이오퓨엘의 사장이자
10  최고경영인으로 있는 J. Lee 에게 캔사스 바이오퓨엘을 지역 센터로 지정함을
11  승인하는 편지를 보냈다.  이 승인 편지는미노동청에 의해 검토되고 분석된
12  캔사스 바이오퓨엘을 후원하는  캔사스 바이오퓨엘의  2006 년 3 월 15 일자의
13  자료와, 신청서와 캔사스 바이오퓨엘이 부수적으로 2007 년 3 월 21 일에 제공한
14  정보를 근거로 하여서 승인됐고 지정됐다. 미노동청의 승인 편지는, J. Lee,
15  켄트와  캔사스 바이오퓨엘에 의해 미노동청에 제공된 신청서와 부수 정보와
16  일치하며 캔사스 바이오퓨엘 지역 센터의 목적을 다음과 같이 확인했다:

17      캔사스 주의 남서부 지역에 위치한 스물 하나(21)의 카운티들 안에  연료
18      등급의  에타놀 생산의 개발과 운영에 중점한 투자를 통하여 경제 성장을
19      촉진하게 될 유한책임회사들(LLCs)에 모아질 개개의 이민 투자가의 자본을
20      유치하기 위함.

21

22  미노동청의 승인서는 이민 투자 프로그램을 통한 이민 비자를 추구하는
23  외국인들이 캔사스 바이오퓨엘 지역 센터 구역 이내에서 사업할 경우 " 이러한
24  새로운 상업용 사업을 위해 미이민청에 개별적으로  이민 신청해도 된다."고 더
25  나아가 서술했고,  개별 이민 투자 용의 최소 자본 투자는 "5 십만 달러
26  이하여서는 안된다."고 서술했다.

27

9

EXHIBIT  1  PAGE 51

1    **B. 피고들은   이민 투자가들로 부터 수백만 달러를 사취했다.**

2         **1.   피고들은 투자금이 에타놀 공장 건설에 사용되게 될 것이라며,**

3         **1 천 1 백 4 십 5 만 5 천 달러를 모금했다.**

4    24. 2009 년 3 월 부터 2011 년 4 월까지, 피고들은 다음과 같은 피고 업체들의

5    유한책임회사들의 세 제안 통하여 스물 네 명의 투자가들로부터 1 천 1 백 4 십 5 만

6    5 천 달러를 모금했다:

7              a.   **AIIF** (2010 년 2 월부터 2011 년 사월까지 아홉 명의

8         투자가들로부터 4 백 7 십 4 만 2 십 달러);

9              b.   **BIIV** (2009 년 3 월부터 2010 년 8 월까지 여섯 명의

10        투자가로부터 2 백 2 십만 5 천 달러);

11             c.   **BVV** (2010 년 4 월부터 2011 년 1 월까지 아홉 명의

12        투자가들로부터 4 백 5 십만 9 천 9 백 80 달러).

13   25. 피고 J. Lee, 켄트, 그리고 해당 발행자 피고 (AIIF, BVIV 혹은 BVV) 들은   각

14   투자가들에게 아래처럼 이뤄진 오퍼 자료를 제공했다: (1)   BVIV 와 BVV 의 경우,

15   각 발행자의 관리 멤버인 넥스랜드를 대표하여 J.Lee 가 서명한, 기밀 정보

16   규약서; (2) 혹은 AIIF 와 관련한 경우에는 정정된 청약서로써, 투자가와

17   넥스랜드의 사장이며, 발행자의 관리 멤버인 J. Lee 가 서명하고, 켄트가

18   "증인"으로 서명한 청약서 (집합적으로, "청약서"); (3) 넥스랜드를 대신하여

19   발행자의 관리 멤버로서의 J. Lee 가 서명한, 넥스랜드와 관련 발행자 사이의

20   운영 합의 혹은 정정된 운영 합의서 (집합적으로, "운영 합의서"); (4) 발행자를

21   대신하여 사장으로서 J. Lee 및 투자가와 제 3 자 로서의 은행측을 대표하는

22   은행측 행원이   서명한 제 3 자 기탁금 동의서; 그리고 (5) 2007 년 12 월

23   19 일자의 넥션 사업 계획서 혹은 2010 년 6 월로 갱신된 계획서, 그리고

24   넥스랜드를 대신하여, 각각 발행자의 관리 멤버인 J. Lee 가 서명한 해당

25   발행자의 사업 계획   실행 요약서.

EXHIBIT ___I___ PAGE 52

1    26. J. Lee 는 모든 오퍼 자료들을 승인했다. 리 앤 켄트가 고용한 서류

2    초안자들 대부분이 영어를 모국어로 쓰지 않는 까닭에,   J. Lee 의 요청에 따라,

3    켄트는 모든 오퍼 자료들을 검토했고, 그래서 그 내용들을 알고 있었다.

4    27. 아래에 열거하는 대로, AIIF, BVIV, 및 BVV 의 각각 세 투자 단위는

5    유가증권으로 투자 계약서의 형태가 이뤄졌다. 왜냐하면 각 투자는 (1) 돈의

6    투자;   (2) 통상례적인 사업;   (3) 다른 노력으로 얻어진 수익 등을 포함하고

7    있기 때문이다.

8           a.    돈의 투자가 있었다

9    28. 각 발행자 피고의 기밀 정보 규약서와 청약서에 설명된대로, 발행자의

10   단위를 구입하기 위해서, 투자가는 5 십만 달러를 투자할 것이 요구됐다. 그

11   돈은 오로지 수입을 낳는 넥션의 투자에만 (AIIF 오퍼) 사용된다. 혹은 넥션의

12   소유주의 단위를 구매하는데 (BVIV 와 BVV 오퍼) 사용된다. AIIF 의 경우, 투자가가

13   지불한 총액은 투자로 이뤄진 5 십 3 만 달러이고, 5 십만 달러는 투자로, 그리고

14   나머지 3 만 달러는 운영 및 경비 지출금으로 사용된다. 비슷하게, BVV 의 경우,

15   투자가 지불한 총액은 5 십만 5 천 달러로써, 5 십만 달러는 투자로 이뤄지고,

16   나머지 5 천 달러는   BVV 에 의해 "행정비"로 보유됐다.

17          b.    통상례적인 사업 투자 됐다

18   29. 피고의 기밀 정보 규약서의 각 발행주는 발행자를 다음처럼 묘사했다. 즉

19   "EB5 투자 프로그램을 통하여 일정 이민 혜택을 추구하는 외국인들의 투자 돈을

20   모으는 …, 이는 해당 이민법의 규정 아래 자격적격한 투자를 할 경우

21   미국에서의 합법적인 영주권을 그 투자가에게 보장한다." 비슷하게,   AIFF 의

22   개정 청약서를 포함한, 청약서의 각 발행자는 투자가가   "EB5 투자 프로그램

23   아래 이민 혜택을 취득함을 주 목적으로" 자본을 발행자에게 지급한다고

24   분명히 명시하고 있다.   궁극적으로,   위에서 밝힌대로, 2009 년 3 월 부터 2011 년

25   4 월에 이르는 기간 동안, 각 오퍼는 몇몇 투자가들로부터 수 백만 달러에

26   달하는 돈을 거두어, 전체 총액 약 1 천 1 백 5 십만달러에 달하는 금액을 스물 네

27   명의 투자가들로부터 거뒀다.

EXHIBIT   l   PAGE 53

1      c.      다른 것들의 노력으로부터 수익이 나올 것이다

2      30. 피고의 기밀 정보 규약서의 각 발행자는 더 나아가 미이민청에게 신청한

3   거주권을 위한 투자가의 I-526 신청서가 허락됨을 기해서, 발행자는 AIIF 의 경우,

4   투자가의 돈 5 십만 달러를 넥션에 융자/투자하여, "캔사스 율리시스에 에타놀

5   생산 시설과 부대 사업들을 개발하고 건설하는데 쓰게 될 것"이라 했다. 혹은,

6   BVIV 와 BVV 의 경우, "[넥션]이라 알려진 새로운 상업용 사업체의 소유권 단위를

7   얻기 위하여 ... [이는 2006 년에 설립된 것으로써] 캔사스의 남서부에 통합적

8   바이오-연료 정련장을 개발하고 운영하는데" 쓰일 것이라고 했다. 비슷하게,

9   넥스랜드는, 그것의 사장 J. Lee 를 통해, 각 발행자의 청약서에 분명히 명시된

10  대로, 이 전체 [투자] 금액 [5 십만 달러]가 [발행자에 의해] 특정 목적을 위해

11  유일하게 쓰일 것이라 했다. AIIF 의 경우, "넥션에 수입을 낳는 투자를 하는 것"

12  이, 그리고 BVIV 와 BVV 의 경우도 이와 비슷하게, "넥션의 회원권을 획득하는 것"

13  이 특정 목표였다. 덧붙여, 발행자의 기밀 정보 규약서에 따르면, 이 투자는

14  이민법 아래 "자격에 맞는 투자"에 해당한다고 했다. 왜냐하면 이는 (1) 최저

15  5 십만 달러; (2) 목표 지역에 있는 목표 사업으로서, 프로그램의 최소 고용자리

16  창출의 요구에 맞도록 적어도 고려됐고, (3) 목표 지구 안에 거주하는 개개인을

17  고용하기 위한 최선의 노력을 하기 위해  목표사업 (넥션) 을 하려는

18  때문이라고 했다.

19     31. 각 발행자의 기밀 정보 규약서와 청약서는 그들의 투자와의 교환으로,

20  투자가들은 보답을 받게 된다고 제공했다. AIIF 의 경우,  5 년에 숙성하는

21  투자로서, 투자가들은 그들 투자의 1 퍼센트까지 달하는 연례 배당금을 받게 될

22  것이고,  넥션에 투자금이 제공된 날자를 기점으로 비례 계산되고,  매년 2.5

23  퍼센트의 연 비율로 이자를 반년마다 지불받는다고 했다.  BVIV 와 BVV 의 경우,

24  기밀 정보 규약서는,  "[발행자의] 넥션에 대한 투자로 인한 이득과 손실은

25  [발행자의] 비례적 소유권에 기준해서 멤버들에게 나눠지고 분담케 될 것이라

26  했다.

1    32. 각 발행자의 기밀 정보 규약은 더 나아가 발행자의 관리 멤버는

2    넥스랜드가 될것이고, 그리고 발행자의 매일 매일의 관리는 넥스랜드에 의해

3    이뤄질 것이라고도 했다. 정말로, 각 발행자의 기밀 정보 규약은 "[발행자의]

4    운영 동의서의 규정 아래, [발행자] 멤버는 매일의 관리에 참여할 수 없다,"고

5    확실히 했고, 이에 더 나아가 "매일의 관리 결정, 차용 결정, 투자 결정, 배당금

6    지불에 대한 결정, 그리고 투자가의 투자철회에 관한 결정들은 관리 멤버,"

7    넥스랜드의 단독적인 고려에 있다고 했다. 각 발행자의 넥스랜드 운영 동의서는

8    "[발행자]의 권한 행사와 [발행자]의 사업 및 매일의 일상사를 관리하는 권리는

9    관리 멤버 [넥스랜드]에만 주어져 있다."는 유사한 조항을 담고 있다. 운영

10   동의서는 더 나아가 발행자의 사장- 모든 경우, J. Lee - 이 총 관리자고

11   발행자의 최고 경영인이며, 그리고, 관리 멤버, 넥스랜드의 지배를 받게 된다고

12   했다. 넥스랜드의 사장 역시 J. Lee 이다. 넥스랜드는 발행자의 사업을 총괄해

13   관리감독하고 방향을 정하고 지배하게 된다고 했다.

14   33. 투자가가 투자를 한 후, 표준적인 서류뭉치가 J. Lee 와 켄트에 의해

15   마련돼 투자가의 이민 비자 청구서의 일환으로 미이민청에 보내진다. 이

16   서류뭉치는 오퍼 서류, 투자가의 지불 증명, 그릭고 투자할 투자가의 자금의

17   출처, 및 켄트가 작성한 편지 앞장으로 이뤄졌다.

18   34. 투자가들의 이익은 따라서 다른 사람들 – 사장 J. Lee 를 통한 피고 발행자

19   및 역시 J. Lee 가 통제하는 피고 관리 멤버 넥스랜드- 의 노력으로부터

20   유래하도록 되어 있다.

21

22   **2. 피고들이 제시한 것과는 달리, 에타놀 공장은 건축되지**

23      **않았다**

24   35. 이상에서 밝힌대로, 각 피고 발행자의 오퍼 자료는 투자가의 돈이 피고

25   넥션에 투자되어질 것이라 했다. 넥션은 캔사스 남서부에 바이오 연료 정련장과

26   에타놀 생산공장을 개발하고 운영하기 위해 설립되어 있다고 말해졌다. 2010 년

27   6 월에 갱신된 넥션 사업 계획서는 "주요 건축공사가 진행중이며 공장은 2011 년

13

1  11 월 이전에 작동하게 될 것이다"라고 분명하게 명시하고 있다.  켄트 역시도
2  구두로 투자가들에게 그들의 자금이 캔사스에 있는 넥슨 공장을 짓는데 쓰이게
3  될 것이라고 말했다. 그에 더해서, 켄트는 J. Lee 와 R. Lee 가 2008 년 부터 2010 년
4  까지 로스앤젤레스에서개최한 세미나들에 참석했다. 그 세미나의 주요 부분은
5  넥산 에타놀 프로젝트를 소개하는데 쓰였다. J. Lee 는 이런 세미나들에서
6  잠정적인 투자가들에게 전개해보인 모든 정보를 승인했다.

7     36. 사실상, 공장 건설은 결코 완성되지 않았다.  땅고르기, 철로깔기를 위한
8  작업 및 소방 도로 건설과 같은 단지 초보적인 단계로 이뤄진 건설공사는
9  넥션의 사업 계획이 "갱신된" 2010 년 6 월에 훨씬 앞서, 대략 2008 년도 중반
10  경에 중단됐다.

11     37. 모든 오퍼 자료를 검토하고 따라서 이 자료들이 투자가들의 돈이 에타놀
12  공장을 건축하는데 쓰일 것이라고 표현한 것을 알고 있는 켄트는 지상 위
13  건축물을 지을 자본이 없기 때문으로 해서 지상 위의 건축물이 없다는 것과,
14  그리고 그 공사가 중단됐다는 것을 알고 있었다. 특별히, 켄트는 공장 건설의
15  상태를 알고 있었는데, 그 이유는 그가 건설청부자들과의 계약서를 준비하는
16  일에 관여했으며, 그리고 그는 수십번이나 현장에 있었고 공사 현장에서 건설
17  상태를 보았기 때문이다. 켄트는 2011 년 8 월 리 앤 켄트를 떠날 때, 공장이
18  건설되지 않았다는 것을 알고 있었다. 그는 현장에 그 무슨 건설공사를 하든지
19  간에 공사를 위한 자본의 출처는, 은행융자가 전혀 없었기 때문에, 오로지
20  투자가들의 돈이라는 것 역시 알고 있었다.

21     38. J. Lee 는 건설청부자의 제반 경비를 승인하는 책임을 지고 있었음으로
22  해서 공장 건설의 상태를 알고 있었다.

23     39. 2007 년 12 월 19 일 및 갱신된 2010 년 6 월의 넥션 사업 계획은 2007 년
24  10 월 15 일에 넥션이 프레어리 호라이즌 애그리-에너지 유한책임회사 ("PHAE")와
25  공장 관리 동의서를 맺었다고 표시하고 있다. 넥션 사업 계획은 더 나아가,
26  동의서에 준해서, PHAE 는 5 년을 계약으로 공장 관리, 위험 관리, 그리고 마켓팅
27  서비스를 넥션에 제공하는 일을 맡았으며,  위험 자본 투자조로 2 백 5 십만

1   달러를 넥션에 투자 했고,  그리고넥선의 이사직 두 자리가 주어졌다고 했다.

2   넥선의 사업 계획은 또한 PHAE 의 최고경영인과 총관리자의 에타놀 공장 관리에

3   관한 막대한 경험과, 그리고 PHAE 의 "에타놀 시설물을 효과적이며 영리 있게

4   운영해온 증명된 기록"을 제공한다고도 했다.

5      40. 그러나, 실제상, 넥선의 사업 계획이 2010 년 6 월 갱신되기 전에, 켄트는

6   넥선을 대신해서 2008 년 9 월 12 일자로 효력이 발생하는 공장 운영 철회 상호

7   동의서에 서명했고, 그로해서 넥선은 PHAE 에게 에타놀 프로젝트에 대한 운영

8   서비스 제공 및 투자에 대한 총액 2 백 2 십 5 만 달러를 전부 환불했다. 그럼에도

9   불구하고, 그 후에 만들어진 2010 년 6 월의 "갱신된" 넥산 사업 계획은 PHAE 가

10  이 프로젝트에 중요한 역할을 하며 투자했다는 것을 말하고, 그리고  2011 년

11  4 월에 까지에도  이 사업 계획서는 투자가들에게 배포됐다.

12     41. 켄트는 공사가 진행되지 않았던 2008 년과 2009 년에 공사 현장을 자주

13  방문했다. 특히, 켄트와  R. Lee 는 넥선을 대신해서 2009 년 3 월 11 일 혹은 그

14  즈음에 캔사스 율리시즈에서 개최된 그랜트 카운티 경제 개발 주식회사

15  ("GCEDC") 의 모임들에 참석했다. 켄트와  R. Lee 가 참석한 그 모임들에서,

16  에타놀 공장은 그 시점에서 경제적으로 타당치 않다는 것이 토론됐다.

17     42. 대략 2011 년에, J. Lee 는 현장에서 공사 트레일러를 철수할 것을 명령했다.

18  그는 트레일러 임대료를 계속해서 지불하고 싶지 않았기 때문이었다.

19     43. J. Lee 와 켄트는, 건설공사가 멈춰졌기 때문에, 또 에타놀 공장 건설은

20  경제적으로더이상 타당치 않다는 것을 알기 때문에, 공사가 "진행중"이고 공장은

21  2011 년 11 월 이전에 운행될 것이라는 말은 거짓이라는 것을 알면서도, 그럼에도

22  불구하고, 2010 년 6 월에 갱신된 넥선의 사업계획서를 투자가들에게 배포하는

23  일을 중지하지 않았다.

24     **3.   피고들은 넥산에 의해 고용 창출이 됐다는 것을 보이기**

25  **위해 오도적인 서류를 미이민청에 제출했다.**

EXHIBIT____1____PAGE_ 51

1    44. 캔사스 바이오퓨엘이 USCIS EB-5 의 지역 센터의 위치를 확보하기 위해,

2    피고들은넥션이 영구적인 풀타임 일자리들을 창출했다는 것을 보여야만 했다.

3    만약 캔사스 바이오퓨엘이 EB-5 의 지역 센터 위치를 잃는다면, 투자가들은 영주

4    거주 신분을 넥션 프로젝트에 투자함을 교환으로 해서 구할 수 없게 될 것이다.

5    넥션 에타놀 공장은 결코 건설되지 않았기 때문에, 그 공장과 관련한 그와같은

6    풀타임 일자리는 창출된 적이 없다.

7    45.  넥션은 그럼에도 불구하고 직원을 모집했다. 넥션에 모집된 각각의

8    직원들에게 미이민청의 양식의 하나인  I-9 양식, 고용 자격 확인서,이 제공됐다.

9    캔사스에서 피고들을 위해 일한 사무보조원이나 혹은 직원은 양식의 제 1 항과

10   2 항을 기재완성해야 한다.   피고용인의 이름, 주소, 그리고 기타 개인 신상에

11   관한 정보들을 제공하고, 피고용인의 신분증 (운전면허증 등과 같은)을 나열하고,

12   그리고 피고용인이 서명을 그 양식에 날인한다. 그런 후 사무보조원은 그

13   양식을 로스앤젤레스에 있는 넥션에 팩스로 보내어, 넥션  사장으로서의   J.

14   Lee 의 확인을 받는다.

15   46. 2010 년과 2011 년에, 피고들은 특정 투자가들의 미국내 거주에 대한

16   조건을 철회해줄 것을 청하며 I-829 양식의 서류묶음을 미이민청에 제출했다.

17   증명확인 됐다는 I-9 양식과 함께 직원들의 명단이 I-829 양식 묶음에 포함됐고,

18   그리고/또는특정 I-829 청원서에 대한 보조후원하는 추가 증빙("RFE") 자료를

19   요청한 미이민청에 대한 넥션의 답변의 일환으로서의 자료가 포함됐다. 켄트는

20   I-829 양식 묶음의 편지 앞장을 썼고 서명했고, R. Lee 는 I-9 양식과 서류묶음에

21   포함될 기타 서류들을 준비하는 일에 참여했다. 그들이 그것을 미이민청에

22   제출하기 전에 켄트가 I-829 양식의 서류묶음을 검토했다.

23   47. 피고들이 제출한 I-829 양식에 응하여, 미이민청은 2010 년과 2011 의 여러

24   RFEs 에서, 신청 투자가는 에타놀 공장의 운영을 위한 직접적인 고용 창출을

25   했다는데 대한 증빙이나 혹은, 여러 증빙 자료 중, 에타놀 공장의 완성을

26   증빙하는 기록 문서와 요구된 2 년 기간의 거주 기간 이내에 적격적인

27   피고용인들을 고용했음을 증빙하는 문서 등의 제출이 요구된다고 했다.

1   48. 넥선의 직원 명단, 2010 년 9 월자의 명단과 2010 년 8 월자의 명단을

2   포함해서, 은 미이민청 RFEs 에 대한 답변으로 피고들에 의해 만들어진

3   제출서류에 포함됐다. 미이민청에 제출된 직원 명단은 오도적인 것이었다. 다른

4   것들 중에도,  켄트와 R. Lee 가 넥선 에타놀 공장 건설이 멈췄다는 것을 알고난

5   훨씬 후에 제출됐기 때문이다. 그 명단들은 R. Lee 와 켄트의 아내를 캔사스

6   TEA 에 살기보다는 캘리포니아에 살고 있다는 것을 밝히지 않은 채,넥선의

7   풀타임 직원들로 열거해 올렸기 때문에 더더욱 오도적이었다.   그리고 2010 년

8   2 월 9 일과 8 월 31 일의 명단들에 켄트의 아내가 넥선을 위해  최고로 했어야

9   사무원 일을 했음에도, 그녀의 지위를 "회계사"로 명기했기 때문이다.

10  49. 미이민청 RFEs 에 대한 답변에는 또한 켄트와 넥선의 사장으로서의 R.

11  Lee 가 서명한 허위 및 오도적인 편지가 포함돼 있다. 2010 년과 2011 년에 RFE

12  제출에 포함된 그의 편지에서, 켄트는  넥선에 의해 스물 하나 혹은 스물

13  여섯의, 투자가의 I-829 청원 날짜에 맞추어 포함된 2010 년 2 월 9 일 혹은 8 월

14  31 일자의  넥선의 직원 명단에 따라서,  "풀타임 직접적인 일자리"가

15  창출됐다고 거짓으로 말했다.   에타놀 공장이 아직 건설되지 않았다는 사실에

16  관한 미이민청의 문의에 대한 답변으로서 켄트는 이렇게 거짓으로 말했다:

17        위협적인 경제적인 상태에 대면하고 콘트롤할 수 없는 지연에도 불구하고,

18        제시된 증빙자료는 넥선의 정련장의 건설공사가 크게 진척됐고 성공적인

19        완성으로 나아가고 있다.... 청원자는 2012 년도 첫사분기까지 건설이

20        완료되고 상업적 운영이 시작될 것으로현재 기대하고 있다.... 넥선의

21        고용 과정은 이것의 자본 경비지출로서 계속 진행중이다. 프로젝트가

22        완성에 이를 때 그와 같은 추가적인 직접적 일자리들과 문자그대로

23        수백에 이르는 간접적 일자리가 아주 가까운 장래에 창출될 것이다.

24  켄트는 공사가   2008 년도 중반에 종료됐고 그리고 공사가 다시 재개되지

25  않았고, 그리고 직원 명단에 있는 그 누구도 존재하지 않는 넥선 에타놀 공장에

26  관련된 일을 수행하지 않는다는 것을 안 채로 이러한 진술을 하였다.

EXHIBIT   1   PAGE 59

1    50. 2010 년 및 2011 년의 RFE 제출에 포함된 자신의 편지에서, R. Lee 는

2    "경제적인 상태"가 넥산으로 하여금 자본 조달을 하기 어렵게 했다, 그러나

3    넥선은 캔사스 그랜트 카운티에 연 4천만 갤론의 연료 등급의 에타놀 생산

4    시설을 여전히 건축할 의향이며, 그 프로젝트를 저버리지 않았다고 거짓으로

5    진술했다. 켄트와 같이, R. Lee 도  "공사가 많이 진행 중이다," 그리고 넥선은

6    공사가 완공될 것이며 상업용 운영은 2012 년 첫 사분기까지 완료될 것이라고,

7    이런 사실들이 진실이 아니라는 것을 알면서, 진술했다.

8    51. 에타놀 공장이 결코 존재하지 않았기 때문에, J. Lee 와/나 R. Lee 가 에타놀

9    공장과 관련해 넥선의 봉급 수표를 받게 만든, 넥선에서 그 어떤 일이든 일을

10   수행토록 고용된 사람은 없다.

11   **4.    피고들은 투자 자금을 착용하고 오용했다**

12   52. J. Lee 가 넥선 프로젝트 용으로 거둬진 투자가의 돈을 어떻게 사용할

13   것인지에 대해 궁국적인 권한을 지녔다.  여러 상인들로 부터 지출경비를 받은

14   켄트에 의해서 공사 지출 책정비가  J. Lee 에게 제출됐다.  J. Lee 는 예산을

15   승인하거나 혹은 그의 부하에게 반대오퍼를 만들도록 지시했다. J. Lee 는 넥선의

16   경비지출을 승인할 권한이 있었다; R. Lee 역시 J. Lee 와 상의한 뒤, 지출을

17   승인했다. J. Lee 는 피고의 각 업체의 모든 은행구좌의 서명인이다.

18   53. R. Lee 는 J. Lee 가 서명하지 않은 모든 수표에 서명한다. R. Lee 는 J. Lee 와

19   함께, 피고 BVV, 넥스랜드 및 넥선의 은행구좌, 그리고 BVIV 의 두 은행구좌 중

20   하나의 서명인이었다.

21   54. 켄트 역시 넥선의 경비지출에 대해 알고 있었다. 넥선이 공사비를 과용

22   청구받지 않도록 하기 위해 그는 넥선의 경리장부와 보고를 검토했기 때문이다.

23   그리고 그런 보고들은 공사청부자에게 지불한 것은 2008 년 12 월이 마지막라고

24   보여준다.

1    55. J. Lee 와 R. Lee 는적어도 7 백 2 십 1 만 달러, 혹은 AIIF, BVIV, BVV 의 오퍼에서
2    투자가들로부터 거둔 1 천 1 백 4 십 5 만 5 천 달러의 62.94 퍼센트를, 착용하고
3    오용했다. 구체적으로:

4            a.       J. Lee 와 R. Lee 는 3 백 8 십 9 만 5 천, 혹은 투자 기금의 34
5        퍼센트를 모래에서 철광석을 추출하는필리핀에 있는 프로젝트에 자금을
6        댔다.

7            b.       J. Lee 와 R. Lee 는 2 백 3 십 8 만 달러, 혹은 투자 기금의 20. 78
8        퍼센트를 그들 돈의 반환을 요구하는 투자가들에게 지불했다.

9            c.       J. Lee 와 R. Lee 는 AIIF, BVIV, BVV 에의 투자와는 상관 없는
10       목적을 위해서, 그들이 소유하고 콘트롤하는 다른 업체에 추가로 적어도
11       7 십 6 만 달러를 보냄으로써 이를 착용하고 오용했다.

12   56. 기금의 오용은 J. Lee 가 현찰이 딸리고 자금을 얻는데 곤란을 당할 때
13   투자가의 제 3 자 신탁금 구좌에서, 거주권을 위한 투자가의 I-526 신청이
14   승인받기도 전에 그들이 알지 못하는 채, J. Lee 가 돈을 지출한 것도 포함된다. J.
15   Lee 는 투자가들을 사기치는 행위라는 것을 알면서도, 그의 회사의 다른
16   변호사들이 그같은 인출을 할 권한이 그에게 없다는 것을 조언했고, 그리고
17   기밀 정보 규약서, 청약서, 제 3 자 신탁 합의서를 포함한 본인이 작성한 오퍼
18   서류가 그같은 인출을 J. Lee 에게 허용하지 않는다는 것을 알면서도, 그렇게
19   했다.  켄트는 J. Lee 가 이렇게 기금을 오용했다는 것을 알고 있었으나, 그럼에도
20   불구하고 투자가들에게 그들의 돈이 오용된다는 것을 알리지 않았고, 그리고
21   적어도 2011 년 4 월까지 오퍼를 하는 일에 참여했다.

22

23                    ## 첫번째 구제 청구

24              ### 증권의 오퍼 혹은 매매에 있어서의 사기

25                   증권법 제 17(a)항의 위반

26                    (모든 피고에 반해서)

19

1    57. 증권거래위원회는 위의 귀절 1 에서 56 까지를 참조로 재주장하고
2 통합한다.

3    58. 피고들은, 유가증권을 오퍼하거나 매매함에 있어서 이상에서 서술한
4 행위에, 직접적으로 혹은 간접적으로, 관여함으로써 주 사이의 상거래에
5 교통이나 소통의 수단 또는 방편으로, 혹은 우편물의 이용으로;

6          a.      의도적으로, 사기치기 위하여 방안, 획책 또는 계략을
7                  구사했다;

8          b.      그들이 처한 처지형편 아래, 오도한 것은 아니나, 유형적
9                  사실에 대해 진실이 아닌 진술을 함이나 또는 진술을 하기
10                 위해 필요한 유형적 사실을 탈락시킴으로써 돈이나 부동산을
11                 획득했다; 혹은

12         c.      구매자에게 사기나 속임수로 운영됐거나 운영되게 될 사업의
13                 거래, 관행, 혹은 실행에 관여했다.

14   59. 이상에서 서술한 행위에 관여함으로써, 피고들은 증권법, 15 U.S.C. § 77q(a)
15 의 제 17(a) 항을 위반했고, 제지받거나 금지받지 않는 한 계속해서 위반할
16 것이다.

## 두번째 구제 청구

### 증권의 구매와 판매에 관련된 사기

#### 거래법의 제 10(b) 항과 그 부속의 제 10b-5(a) 조 위반

**(거래법 제 20(a) 항 아래, 주요 위반자로서 모든 피고들과, 그리고, 교대로,
지배자로서의 J. Lee 에 반하여)**

22   60. 증권거래위원회는 참조로 위의 귀절 1 에서 56 까지 재주장하고 통합한다.

23   61. 피고들은, 증권을 구매 또는 판매하는데 관련해서, 이상에서 서술한
24 행위에, 직접적으로 혹은 간접적으로, 주 사이의 통상, 우편물, 혹은 국내 증권
25 거래 시설의 수단과 방편으로써, 관여함으로써, 고의를 가지고:

20

**EXHIBIT ___ PAGE 62**

1      a.    사기를 치기위하여 방안, 획책, 혹은 계략을 구사했다.

2      b.    행위, 실행 혹은 다른 사람에게 사기나 속임수로서

3         운영됐거나 운영되어질 사업상의 진행에 관여했다.

4   62. 이상에서 서술한 행위에 관여함으로써, 피고들은 거래법, 15 U.S.C. §

5  77q(a)의 제 10(b) 항과, 그 부속의 제 10b-5(a)와 (c) 조, 17 C.F.R. §§ 240.10b-5(a)

6  & 240.10b-5(c), 를 위반했고, 그리고 제제받지 않고 규제받지 않으면 계속해서

7  위반하게 될 것이다.

8   63. 피고 J. Lee 는 피고 AIIF, BVIV, BVV, 넥스랜드 및 넥션을 지배하는

9  인물이었다. 직접적 혹은 간접적으로, 그가 이들 각 업체들의 관리와 정책의

10  방향을 지시하거나 혹은 방향을 정할 권한을 갖고 있었기 때문이다. 그에

11  따라서, 거래법, 15 U.S.C. § 78t(a), 의 제 20(a) 항에 준해서,  피고 J. Lee 는

12  증권거래위원회에게 책임이 있다. 이런 피고 업체들의 제 10(b)과 그 부속의

13  10b-(a)와 (c)의 위반에 관해서 각 피고 업체들과 같은 정도로 증권거래위원회에

14  책임이 있다.

15                <u>세번째 구제 청구</u>

16        <u>증권의 구매 혹은 판매에 관련한 허위</u>

17      거래법 제 10(b)과 그 부속 제 10b-5(b) 조의 위반

18    (거래법 제 20(a) 항 아래, 주요 위반자로서 J. Lee, 켄트,  AIIF, BVIV, BVV,

19  넥스랜드 및 넥산, 그리고, 교대로,  콜트롤하는 사람으로서의 J. Lee 에 반하여)

20   64. 증권거래위원회는 위의 귀절 1 에서 56 까지를 참조로 재주장하고

21  통합한다.

22   65. 피고 J. Lee, 켄트, AIIF, BVIV, BVV, 넥스랜드 및 넥산은, 증권을 구매 또는

23  판매하는데 관련해서, 이상에서 서술한 행위에, 직접적으로 혹은 간접적으로, 주

24  사이의 통상, 우편물, 혹은 국내 증권 거래 시설의 수단과 방편으로,

25  관여함으로써, 고의를 가지고, 그들이 처한 처지형편 아래, 오도한 것은 아니나,

1  유형적 사실에 대해 진실이 아닌 진술을 함이나 또는 진술을 하기 위해 필요한

2  유형적 사실을 탈락시켰다.

3      66. 이상에서 서술한 행위에 관여함으로써, 피고 J. Lee, 켄트, AIIF, BVIV, BVV,

4  넥스랜드 및 넥산은거래법, 15 U.S.C. § 78j(b)의 제 10(b) 항과, 그 부속의

5  제 10b-5(a)와 (c) 조, 17 C.F.R. § 240.10b-5(b), 를 위반했고, 그리고 제제받지 않고

6  규제받지 않으면 계속해서 위반하게 될 것이다.

7      67. 피고 J. Lee 는 피고 AIIF, BVIV, BVV, 넥스랜드 및 넥선을 콘트롤하는

8  인물이었다. 직접적 혹은 간접적으로, 그가 이들 각 업체들의 관리와 정책의

9  방향을 지시하거나 혹은 방향을 정할 권한을 갖고 있었기 때문이다. 그에

10  따라서, 거래법, 15 U.S.C. § 78t(a), 의 제 20(a) 항에 준해서,  피고 J. Lee 는

11  증권거래위원회에게 책임이 있다. 이런 피고 업체들의 제 10(b)과 그 부속의

12  10b-(a)와 (c)의 위반에 관해서 각 피고 업체들과 같은 정도로 증권거래위원회에

13  책임이 있다.

## 구제를 위한 청원

15      그런 이유로, 증권거래위원회는 이 법원에 삼가 청합니다:

16                              I.

17      피고들이 주장되어진 위반을 저질렀다는 법의 결정과 결론을 내려줄 것.

18                              II.

19      연방민사법 65(d) 와 일치하는 형식으로, 피고들과 그들의 중역들, 요원들,

20  하수인들, 직원들과 변호사들, 그리고 그들과 활발히 제휴한 혹은 이들 중 어느

21  누구와도 관여한 사람들로서, 직접 혹은 여타 방법으로 판결문을 송달받은

22  사람을 증권법 15 U.S.C. § 77q(a)의 제 17(a) 항과,  증권법 15 U.S.C. § 78j(b) 의

23  제 10b 항, 그리고 그 부속의 10b-5 조, 17 C.F.R. §§ 240.10b-5 의 위반함으로부터

24  영구히 금지하는 판결 내려줄 것.

25                              III.

1    피고들에게 불법 행위로 얻는 모든 부당 이득을 판결전의 이자와 함께
2    토해낼 것을 명령할 것.

3                                          IV.

4    피고들이 증권법 15 U.S.C. § 77t(d)의 제 20(d) 항, 그리고 증권법 15 U.S.C. §
5    78u(d)(3)의 제 21(d)(3) 항 아래 형벌을 받게 명령할 것.

6                                          V.

7    형평의 원리와 연방 민사법에 준하여, 내려질 수 있는 모든 명령과
8    판결을 적용하고 수행할 수 있기 위하여, 혹은 추가적인 구제를 위한 그 어떤
9    적합한 신청이나 발의를 이 법원의 관할 구역 안에서 받아들일 수 있기 위하여
10   이 소송의 관할권을 유지해줄 것.

11                                         VI.

12   동 법원이 공정하고 필요하다고 결정내릴 수도 있는 그 밖의 그리고 그
13   이상의 구제를 보장해줄 것.

14

15   날짜: 2014 년 9 월 3 일

16

17                         /s/ Karen Matteson

18                         Karen Matteson

19                         검사

20                         증권거래위원회

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge  **R. Gary Klausner**  and to

Magistrate Judge  **Charles F. Eick** .

The case number on all documents filed with the Court should read as follows:

### 2:14−cv−06865−RGK−Ex

Pursuant to General Order 05−07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery−related motions. All discovery−related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U.S. District Court

September 4, 2014
Date

By  _/s/ Carmen Reyes_
Deputy Clerk

## ATTENTION

*A copy of this Notice must be served on all parties served with the Summons and Complaint (or, in cases removed from state court, on all parties served with the Notice of Removal) by the party who filed the Complaint (or Notice of Removal).*

CV−18 (04/14)          NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES



EXHIBIT____|____PAGE 66

# 캘리포니아 중앙 지구

## 미합중국 판사들에 임무담당 통지

이 케이스는 지방 법원 판사 **R. Gary Klausner** 에게 그리고 수탁 판사 **Charles F. Eick** 에게 임무담당 되었다.

법원에 제출되는 모든 문서의 케이스 번호는 다음과 같아야 한다:

### **2:14−cv−06865−RGK−Ex**

캘리포니아 중앙 지구의 미합중국 지방 법원의 일반 명령 05−07 준하여, 수탁 판사는 발견에 관련한 발의를 듣도록지정돼 있다.발견에 관련한 모든 발의는 수탁 판사의 재판일정에 통보되어져야만 한다.

법원 서기, 미합중국 지방 법원

_2014년 9월 4일_
날짜

By  _/s/ Carmen Reyes_
서기보

---

## 주의

_이 통지의 사본은 소환장과 고소장을 송달받은 모든 이에게 (혹은, 주 법원에서 이송됐을 경우, 이송 통지를 송달한 모든 이에게) 고소 (혹은 이송 통지) 게재한 자에 의해 전달돼야 한다_

CV−18 (04/14)          미합중국 판사에 담당임무 통지

EXHIBIT___|___ PAGE 67

1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **CENTRAL DISTRICT OF CALIFORNIA**
10
11  SECURITIES AND EXCHANGE           )   CASE  NO. CV-14-6865 RGK  (Ex)
    COMMISSION,                       )
12                                    )   **STANDING ORDER REGARDING**
                      Plaintiff(s)    )   **NEWLY ASSIGNED CASES**
13                                    )
    v.                                )
14                                    )
    JUSTIN MOONGYU LEE, et al.,       )
15                                    )
                      Defendant(s)    )
16  _____  )
17
18
19
20       **READ THIS ORDER CAREFULLY.  IT CONTROLS THIS CASE.**
21
22       This action has been assigned to the calendar of Judge R. Gary Klausner.  The
23  responsibility for the progress of litigation in the Federal Courts falls not only upon the
24  attorneys in the action, but upon the Court as well.  "To secure the just, speedy, and
25  inexpensive determination of every action," Federal Rule of Civil Procedure 1, all
26  counsel are hereby ordered to familiarize themselves with the Federal Rules of Civil
27  Procedure, particularly Federal Rules of Civil Procedure 16, 26, the Local Rules of the
28

1   Central District of California, this Court's Order for Jury Trial, and this Court's Order

2   for Court Trial.[1]

3

4   **UNLESS   OTHERWISE   ORDERED   BY   THE   COURT,   THE**

5   **FOLLOWING RULES SHALL APPLY:**

6

7        1.  **Service of the Complaint**.  The Plaintiff(s) shall promptly serve the

8   Complaint in accordance with Fed. R. Civ. P. 4 and file the proofs of service pursuant

9   to Local Rule.  Any Defendant(s) not timely served shall be dismissed from the action

10  without prejudice.   Any "DOE" or fictitiously-named Defendant(s) who is not

11  identified and served within 120 days after the case is filed shall be dismissed pursuant

12  to Federal Rule of Civil Procedure 4(m).

13       2.  **Removed Actions**.  Any answers filed in state court must be refiled in this

14  Court as a supplement to the petition.  Any pending motions must be re-noticed in

15  accordance with Local Rules.  If an action is removed to this Court that contains a form

16  pleading, i.e., a pleading in which boxes are checked, the party or parties utilizing the

17  form pleading must file an appropriate pleading with this Court within thirty (30) days

18  of receipt of the Notice of Removal.  The appropriate pleading referred to must comply

19  with the requirements of Federal Rules of Civil Procedure, Rules 7, 7.1, 8, 9, 10 and

20  11.

21       3.  **Petitions under 18 U.S.C. Section 983(f)**.  Petitioner(s) shall file and serve

22  within 3 days of the date of this order an ex parte application requesting a hearing on

23

24       [1]Copies of the Local Rules are available on our website at "http:\\www.cacd.uscourts.gov" or they may be
     purchased from one of the following:

25
     Los Angeles Daily Journal          West Group                 Metropolitan News
26   915 East 1st Street                610 Opperman Drive          210 South Spring Street
     Los Angeles, CA 90012              P.O. Box 64526              Los Angeles, CA 90012
27                                      St. Paul, MN 55164-0526

28                                              2

EXHIBIT___I___PAGE 69

1  the Petition to ensure prompt resolution of the Petition in compliance with section

2  983(f)'s deadlines.

3        **4. Presence of Lead Counsel.**  The attorney attending any proceeding before

4  this Court, including all status and settlement conferences, must be the lead trial

5  counsel.

6        **5. Discovery.**  All discovery matters have been referred to a United States

7  Magistrate Judge to hear all discovery disputes. (The Magistrate Judge's initials follow

8  the Judge's initials next to the case number.)  All documents must include the words

9  "DISCOVERY MATTER" in the caption to ensure proper routing.  Counsel are

10 directed to contact the Magistrate Judge's Courtroom Deputy Clerk to schedule matters

11 for hearing.  Please do <u>not</u> deliver courtesy copies of these papers to this Court.

12       The decision of the Magistrate Judge shall be final, subject to modification by

13 the District court only where it has been shown that the Magistrate Judge's order is

14 clearly erroneous or contrary to law.  Any party may file and serve a motion for review

15 and reconsideration before this Court.  The moving party must file and serve the

16 motion within ten (10) days of service of a written ruling or within ten (10) days of an

17 oral ruling that the Magistrate Judge states will not be followed by a written ruling.

18 The motion must specify which portions of the text are clearly erroneous or contrary

19 to law, and the claim must be supported by points and authorities.  Counsel shall

20 deliver a conformed copy of the moving papers and responses to the Magistrate Judge's

21 clerk at the time of filing.

22       **6. Motions.**  Motions shall be filed and set for hearing in accordance with Local

23 Rule 6-1, except that this Court hears motions on Mondays commencing at 9:00 a.m.

24 If Monday is a national holiday, this Court will hear motions on the succeeding

25 Tuesday.  If the date the motion was noticed for hearing is not available, the Court will

26 issue a minute order resetting the date.  Any opposition or reply papers due on a

27 holiday are due the **preceding** Friday, not the following Tuesday. **Memoranda of**

28

EXHIBIT____1___ PAGE __70__

1  **Points and Authorities in support of or in opposition to motions shall not exceed**

2  **20 pages. Replies shall not exceed 10 pages**. Only in rare instances and for good

3  cause shown will the Court agree to extend these page limitations. Pursuant to Local

4  Rule, either a proportionally spaced or monospaced face may be used. A

5  proportionally spaced face must be 14-point or larger, or as the Court may otherwise

6  order. A monospaced face may not contain more than 10½ characters per inch.

7  Without prior permission from the Court, no party may file more than one

8  motion pursuant to Fed.R.Civ. P. 56 regardless of whether such motion is denominated

9  as a motion for summary judgment or summary adjudication.

10  **7. Proposed Orders**. Each party filing or opposing a motion or seeking the

11  determination of any matter shall serve and lodge a proposed order setting forth the

12  relief or action sought and a brief statement of the rationale for the decision with

13  appropriate citations.

14  **8. Telephonic Hearings.** The Court does not permit appearances or arguments

15  by way of telephone conference calls.

16  **9. Ex Parte Applications**. The Court considers ex parte applications on the

17  papers and does not usually set these matters for hearing. If a hearing is necessary, the

18  parties will be notified. Ex parte applications are solely for extraordinary relief and

19  should be used with discretion. Sanctions may be imposed for misuse of ex parte

20  applications. See Mission Power Engineering Co. v. Continental Casualty Co., 883

21  F.Supp. 488 (C.D. Cal. 1995).

22  Counsel's attention is directed to the Local Rules. The moving party shall serve

23  the opposing party and shall notify the opposition that opposing papers must be filed

24  not later than 3:00 p.m. on the first business day following service. If counsel does not

25  intend to oppose an ex parte application, he or she must inform the Courtroom Deputy

26  Clerk at (213) 894-2649.

27  **10. Continuances**. This Court has a strong interest in keeping scheduled dates

28

4

1  certain. Changes in dates are disfavored. Trial dates set by the Court are firm and will
2  rarely be changed. Therefore, a stipulation to continue the date of any matter before
3  this Court **must** be supported by a sufficient basis that demonstrates good cause why
4  the change in the date is essential. Without such compelling factual support,
5  stipulations continuing dates set by this Court will not be approved. Counsel
6  requesting a continuance must lodge a proposed stipulation and order including a
7  **detailed** declaration of the grounds for the requested continuance or extension of time.
8  See Local Rules. Failure to comply with the Local Rules and this Order will result in
9  rejection of the request without further notice to the parties. Proposed stipulations
10 extending scheduling dates do not become effective unless and until this Court so
11 orders. Counsel wishing to know whether a stipulation has been signed shall comply
12 with the applicable Local Rule.

13     **11. Communications with Chambers**. Counsel shall not attempt to contact
14 the Court or its staff by telephone or by any other ex parte means. Counsel may
15 contact the Courtroom Deputy Clerk with underline appropriate inquiries only. Counsel shall not
16 contact the Courtroom Deputy regarding status of ex parte application/ruling or
17 stipulation/ruling.

18     **12. Order Setting Scheduling Conference.** Pursuant to Federal Rule of Civil
19 Procedure 16(b), the Court will issue an Order setting a Scheduling Conference as
20 required by Federal Rule of Civil Procedure 26 and the Local Rules of this Court.
21 Strict compliance with Federal Rules of Civil Procedure 16 and 26 is required.

22     **13. Notice of this Order**. Counsel for plaintiff or plaintiff (if appearing on his
23 or her own behalf) shall immediately serve this Order on all parties, including any new
24 parties to the action. If this case came to the Court by a Petition for Removal, the
25 removing defendant(s) shall serve this Order on all other parties.

26     **14. Courtesy Copies**: Courtesy copies are not required with documents filed
27 traditionally over the intake counter. Courtesy copies are required for documents filed

28

1  electronically and shall be delivered to the judge's courtesy copy drop box located

2  outside of the Clerk's Office, Room 181L, no later than the following business day.

3      **15. Applications to File Documents Under Seal**: For detailed instructions and

4  information on the pilot project regarding the submission of sealed documents, please

5  refer to the judge's procedures and schedules on the Court's website. All applications

6  must provide reasons(s) as to why the parties' interest to file the documents(s) under

7  seal outweighs the public's right to access. All applications must also indicate which

8  portions of the documents to be filed under seal are confidential. If a party submits an

9  application to file under seal pursuant to a protective order only (i.e., no other reason

10  is given), **the application will be denied** unless the Court receives within 48 hours

11  from the notice of filing a document providing (1) the reasons the document should be

12  filed under seal; and (2) the portions within the document that are confidential. This

13  document shall be entitled: "ADDENDUM TO APPLICATION TO FILE UNDER

14  SEAL PURSUANT TO PROTECTIVE ORDER".

15

16  DATED:    SEPTEMBER 5, 2014

17

18                                         _____

19                                         R. GARY KLAUSNER
                                           United States District Judge

20

21

22

23

24

25

26

27

28  Revised 07/2013                                6

EXHIBIT __1__ PAGE __73__

Case 2:14-cv-06865-RGK-E Document 6 Page **1** of **6** Filed 09/05/14 Page ID #:32

1

2                         미합중국 지방 법원

3                        캘리포니아 중앙 지구

4

|  | |  |
|---|---|---|
| 증권거래위원회 | ) | 5 |
| | ) | CASE NO. CV-14-6865 RGK (EX)   6 |
| 원고(들) | ) | |
| | ) | 새로 임무담당된 케이스에 대한   7 |
| 대. | ) | 의사규칙   8 |
| | ) | 9 |
| 저스틴 이문규, 기타 등등., | ) | 10 |
| | ) | 11 |
| 피고(들) | ) | 12 |
| | ) | 13   이 |
| | ) | 14 |
| | ) | 15   명 |

16    령을 주의깊이 읽어라. 이 케이스를 콘트롤 한다.

17

18          소송은 개리 클로스너 판사의 법원 일정에 담당 돼있다.  연방 법원에서

19    법정 논쟁의 진보는 소송 변호사들에게만 책임 있는 것이 아니라, 법원에도 책임

20    있다. " 모든 소송의 공정, 신속, 그리고 저렴한 판결을 보장하기 위하여,"

21    연방민사법 1, 모든 변호사는이에 연방민사법, 특별히 연방민사법 16, 26,

22    캘리포니아 중앙지구의 지역법, 동 법원의 배심원 재판 명령, 그리고 동 법원의

23    공판 명령에 대해 친히 알게 되기를 명한다. [1]

---

[1] 지역법에 대한 사본은 웹사이 "http\\www.cacd.uscourts.gov" 또는 다음 장소 중 하나에서 구입할 수 있다.
Los Angeles Daily Journal: 915 East 1ˢᵗ Street, Los Angeles, CA 90012    West Group: 610 Opperman Drive. P.O. Box 64526  St. Paul, MN 55164-0526
Metropolitan News: 210 South Spring Street  Los Angeles, CA 90012

EXHIBIT___|___PAGE__74

1

2

3

4  **법원의 다른 명령이 없는 한, 다음의 규칙들이 적용될 것이다:**

5

6  1. <u>**고소장 송달.**</u>     원고(들)은 연방민사법 4 에 준하여 신속히 고소장을

7     송달하고 지역법에 맞추어 송달 증명을 게재하라. 시기 맞게 고소장

8     송달이 되지 않은 피고(들)은 그 누구든 재소송할 수 있는 여지를

9     남겨둔 채 이 소송에서 기각되게 될 것이다. 그 어떤 "무명인" 혹은

10    신분이 밝혀지지 않은 채 이 케이스가 제기된 지 120 일 이내에

11    고소장이 송달된 허구적으로 명명된 피고(들)은 연방민사법 4(m) 에

12    준하여 기각되게 될 것이다.

13 2. <u>**전거된 소송.**</u>     주 법원에 제기된 그 어떤 답변도 동 법원에

14    진정서에 대한 보충물로서 재접수되어야만 한다. 미결의 발의는

15    무엇이든 지역법에 준하여 재-통지돼야만 한다. 만약 항변의 형식을

16    한, 예를 들어, 박스에 항변 표시를 표기한 것 같은, 소송이 동

17    법원으로 옮겨졌을 경우, 그 항변 형식에 표시를 한 당사자 혹은

18    당사자들은 전거 통지를 받은 지 30 일 이내에 동 법원에 적절한

19    항변서를 접수시켜야만 한다. 언급한 적절한 항변서는 연방민사법, 7,

20    7.1, 8, 9, 10 그리고 11 조의 요구조건에 따라야만 한다.

21 3. <u>**U.S.C. 983(f) 항 아래의 청원서.**</u>  청원자(들)은 청원서에 대한

22    청문회를 요구하는 일방적 재판 신청서를 항 983(f)'의 마감에

23    준수해서 청문회의 신속한 해제를 위하여 이 명령의 3 일 이내에

24    게재하고 송달해야만 한다.

25 4. <u>**주도 변호사의 참석.**</u>  동 법원에서 그 어떤 소송이든, 모든 상태

26    그리고 협상 회담을 포함하여, 변론하는 출석 변호사는 주도 재판

27    변호사여야만 한다.

EXHIBIT____ PAGE 75

5. **개시.**   모든 개시에 대한 자료는 발견에 대한 모든 분쟁을 듣기 위해
미합중국 수탁 판사에게 의뢰되어져 있다. (케이스 번호 옆에 수탁
판사의 머릿글자가 판사의 머릿글자에 따른다. ) 모든 문서는 적절한
경로를 확실케 하기 위해 "발견 재제"란 말의 밑글을 포함해야만 한다.
변호사는 청문회의 일정을 잡기 위해 수탁 판사의 법정 서기보에게
직접 연락하기를 지도한다. 이와 같은 문서들의 의례적 사본을 동
법원에 배달하지 <u>말도록</u>.

수탁 판사의 결정은 최종적이다. 수탁 판사의 명령이 분명하게
잘못이거나 혹은 법에 위반한다는 것을 보여주는데 한해서만 지방
법원에 의해 변경될 여지가 있다. 동 법원에 그 어느 당사자도 검토와
재고려를 위한 발의를 게재하고 송달해도 좋다. 발의하는 당사자는
서면 판결이 송달된 10 일 이내 혹은 서면 판결이 뒤따르지 않는다고
수탁 판사가 말한 구두 판정의 10 일 이내 발의를 게재하고 송달해야만
한다. 발의는 문서 내용의 어느 부분이 분명한 잘못이거나 혹은 법에
위반하는지를 구체적으로 지적해야만 하며, 그리고 주장이 요점과
권위에 의해 후원돼야만 한다. 변호사는 발의한 서류와 응답의 일치된
사본을 게재할 때 수탁 판사의 서기에게 배달해야만 한다.

6. **발의.** 동 법원이 월요일 오전 9 시 부터 발의들을 듣는다는 것을 제하면,
발의는 지역법 6-1 에 맞게 접수되고 청문회를 정하게 될 것이다. 만약
월요일이 국경일이라면, 동 법원은 후속 화요일에 발의들을 청문할
것이다. 만약 발의에 통지된 청문회의 날짜가 이용불가 하면 동 법원은
날짜를 재조정하는 미미한 명령을 내릴 것이다. 마감 일이 공휴일인 그
어떤 반대나 대답 서류는 **앞서 오는** 금요일이 마감일이지, 뒤따르는
후속 화요일이 아니다. **발의를 후원하는 혹은 반대하는 요점과 권위
비망록은 20 페이지를 초과할 수 없다. 답변은 10 페이지를 초과할 수
없다.** 아주 휘귀한 예들 그리고 충분한 이유가 있을 때 한하여 동
법원은 이같은 페이지 한계를 연장하는데 동의할 것이다.  지방법에

EXHIBIT____ PAGE 76

Case 2:14-cv-06865-RGK-E Document 6 Page **4** of **6** Filed 09/05/14 Page ID #:32

1   준해서, 적당한 간격의 혹은 한 간격의 활자면을 사용해도 좋다.

2   적당한 간격의 활자면은 14 포인트 혹은 그 이상이어야만 한다. 혹은

3   동 법원이 달리 명한대로여야 한다. 한 간격의 활자면은 인치 당 10 ½

4   글자 이상을 담아서는 안된다.

5      동 법원의 사전 허락없이, 그 어느 당사자도 연방민사법 56 에 준해서

6   하나 이상의 발의를 해서는 안된다. 그 같은 발의가 즉심에서 혹은

7   즉결에서 발의로 명명됐든 아니든 간에.

8   7. **제안된 명령들.**      발의를 게재하거나 혹은 반대하는 혹은 그 어떤

9   문제든 문제의 판정을 구하는 당사자는 제안된 구제를 위한 명령이나

10   혹은 추구하는 소송과 결정을 위한 간략한 진술이나 이유를 적절한

11   소환장과 함께 송달하고 장부기재해야 할 것이다.

12   8. **전화 청문회.**      동 법원은 회담용 전화를 이용한 출두나 논쟁을

13   허락치 않는다.

14   9. **일방적 재판 신청서.**      동 법원은 일방적 재판 신청서를 서류로

15   간주하고 이같은 문제로 청문회를 보통은 정하지 않는다. 만약

16   청문회가 필요하면, 당사자에게 통보되어질 것이다. 일방적 재판

17   신청서는 오로지 비범한 구제에 국한된 것이고 신중히 사용돼야 한다.

18   일방적 재판 신청서를 오용할 때 제제 조치가 내려질 수도 있다. 참조

19   Mission Power Engineering Co. v. Continental Casualty Co., 883 F.Supp.

20   488 (C.D. Cal. 1995).

21   변호사는 지역법에 주의를 지목하라. 발의하는 당사자는 상대편

22   당사자에 송달하고 반대를 통지할 것이다. 반대 통지 서류는 송달 뒤의

23   첫 사무 날의 오후 3 시를 넘어서 게재되서는 안된다. 만약 변호사가

24   일방적 재판에 반대할 의향이 없으면, 그나 그녀는 법정 서기보에게

25   (213) 894-2649 로 전화해 알려주어야만 한다.

26   10. **연기.**   이 법원은 일정잡힌 날짜를 지키는데 관심이 지대하다.  날짜

27   변경을 싫어한다. 동 법원이 정한 공판 날짜는 확정된 것으로 거의

EXHIBIT _____ PAGE 77

1    변경됨이 없다. 그러므로, 이 법원에서 그 무슨 문제를 위한 날짜라도

2    날짜를 연기하기 위한 약정은 날짜의 변경이 필수적인 지를

3    뒷받침하는 불가결한 이유로써 뒷받침 되어야만 한다. 그같은 강력한

4    사실적 뒷받침이 없으면, 동 법원에 의해 정해진 날짜 연기에 대한

5    약정은 허락되지 않을 것이다.  연기를 요구하는 변호사는 연기나 시간

6    연장을 요청하는 근거가 구체적으로 자세하게 밝혀진 채의 제안된

7    약정이나 명령을 장부에 게재해야 한다. 지방법 참조. 지방법과 이

8    명령을 따름에 실패하면 당사자에게 더 이상 통지하지 않은 채 요청이

9    거절되는 결과가 빚어질 것이다. 일정 연장에 대한 제안된 약정은 동

10    법원이 그렇게 하라는 허락이 없는 한 그리고 허락이 내려지기

11    전까지는 효력이 발생되지 않는다. 약정이 서명 됐는지를 알고자 하는

12    변호사는 해당 지방법을 따를 것이다.

13    **11. 판사실과의 의사소통.** 변호사는 법원이나 혹은 그의 직원에게

14    전화로나 혹은 그 어떤 원격 수단으로라도 연락해서는 안 될 것이다.

15    변호사는 적정한 의문에 한해서만 법정 서기보에게 연락이 허용된다.

16    변호사는 일방적 재판 신청서/판정 혹은 약정/판정의 상태에 관련해서

17    법정 서기보에게 연락해서는 안 될 것이다.

18    **12. 회담 일정 정하기에 대한 명령.**   연방민사법 16(b)에 준하여, 동

19    법원은 연방민사법 26 과 이 법원의 지방법에 의해 요구된대로 동

20    법원을 회담의 일정을 정하는 명령을 발부할 수 있다. 연방민사법

21    16 과 26 을 철저히 따를 것이 요구된다.

22    **13.  이 명령의 통지.**   검사나 혹은 원고 ( 본인 자신을 대신해 출석할 경우)

23    는 이 소송에 포함된 그 어떤 새로운 당사자를 포함하여 모든

24    당사자들에게 이 명령을 즉각적으로 송달해야 할 것이다. 만약 이

25    케이스가 이송 청원서에 의해 동 법원으로 왔을 경우, 이송하는

26    피고(들)은 이 명령을 모든 다른 당사자들에게 송달해야할 것이다.

27    **14. 의례적 사본.**  의례적 사본은 직접 법원 접수대에 전통적으로

28    접수하는 문서들에 포함되지 않아도 된다. 의례적 사본은 서류를 전자

5

EXHIBIT ___ I ___ PAGE ___ 78

1        접수할 때는 요구되며 그리고 서기의 사무실, 181L 호, 밖 판사의

2        의례적 사본을 넣는 서류통에 그 다음 사무일을 넘기기 전에 넣어야

3        한다.

4    15. **문서의 비밀화 신청.**   비밀화 문서를 제출하는데 대한 시험

5        프로젝트에 대한 지침과 정보에 관해서는, 동 법원의 웹사이트에서

6        판사의 절차 와 스케쥴을 참조하시라. 모든 신청서는 당사자(들)의

7        문서(들)의 비밀 게재의 이익이 대중의 문서 열람의 권리보다 무거운

8        것인가에 대해서 이유(들)을 제공해야만 한다. 모든 신청서는 또한

9        문서의 어느 부분이 비밀로 게재되야 할 것인지를 지적해야만 한다.

10       만약 당사자가 보호적 명령에만( 예를 들어, 여타 다른 이유없이)

11       근거해 문서 비밀화를 신청한다면, (1) 문서가 비밀로 게재되어야

12       하는 이유; 그리고 (2) 문서 내 비밀로 돼야 될 부문을 제공하는 서류

13       게재의 통보를 48 시간 이내로 받지 않는 한 , 이 신청서는 기각될

14       것이다. 이 문서는 다음 이름으로 명칭되어야 할 것이다: "보호령에

15       준하여 문서 비밀화 게재 신청 부록"

16

17       날짜: 2014 년 9 월 5 일

18

19       _____

20              R. Gary Klausner

21            미합중국 지방 판사

6

EXHIBIT ___I___ PAGE 79

1  KAREN L. MATTESON (Cal. Bar No. 102103)
   Email: mattesonk@sec.gov
2  CAROL W. LALLY (Cal. Bar No. 226392)
   Email: lallyc@sec.gov
3
   Attorneys for Plaintiff
4  Securities and Exchange Commission
   Michele Wein Layne, Regional Director
5  Lorraine Echavarria, Associate Regional Director
   John W. Berry, Regional Trial Counsel
6  444 S. Flower Street, Suite 900
   Los Angeles, California 90071
7  Telephone: (323) 965-3998
   Facsimile: (213) 443-1904

8

9               **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11

12

13  SECURITIES AND EXCHANGE            Case No.  2:14-cv-06865 RGK (Ex)
    COMMISSION,
14
                 Plaintiff,            **NOTICE OF CHANGE OF**
15                                     **ATTORNEY BUSINESS OR**
                                       **CONTACT INFORMATION**
16       vs.

17  JUSTIN MOONGYU LEE;
    REBECCA TAEWON LEE;
18  THOMAS EDWARD KENT;
    AMERICAN IMMIGRANT
19  INVESTMENT FUND I, LLC;
    BIOFUEL VENTURE IV, LLC;
20  BIOFUEL VENTURE V, LLC;
    NEXLAND, INC., dba NEXLAND
21  INVESTMENT GROUP; and
    NEXSUN ETHANOL, LLC,
22
             Defendants.
23

24

25

26

27

28

                    EXHIBIT___|___PAGE 80

1    TO THE CLERK AND DEFENDANTS:

2      Please be advised that the mailing address and the facsimile number of the

3    Securities and Exchange Commission's (the "Commission") Los Angeles Regional

4    Office and the attorneys representing the Commission in the above-captioned matter

5    have changed.  The former mailing address was 5670 Wilshire Blvd., 11th Floor, Los

6    Angeles, CA 90036 and the former facsimile number was (323) 965-3908. Henceforth,

7    the mailing address and new facsimile number are as follows:

8

9                Securities and Exchange Commission
                 Los Angeles Regional office

10             444 S. Flower Street, Suite 900
                 Los Angeles, CA 90071

11             Telephone:  (323) 965-3998

12             Facsimile:  (213) 443-1904

13

14    Any pleadings, motions, and other papers may now be served on the Commission's

15    counsel of record at the above new address. The Commission's counsels of record are

16    Karen L. Matteson (Cal. Bar No. 102103) and Carol W. Lally (Cal. Bar No. 226392).

17

18

19    Dated: September 26, 2014            Respectfully submitted,

20

21

22                      */s/ Karen L. Matteson*
                      Karen L. Matteson

23                      Carol W. Lally

24                      Attorneys for Plaintiff
                      Securities and Exchange Commission

25

26

27

28

EXHIBIT ___1___ PAGE __81__

Case 2:14-cv-06865-RGK-E   Document 8   Filed 09/26/14   Page 3 of 4   Page ID #:44

## PROOF OF SERVICE

1

2    I am over the age of 18 years and not a party to this action.  My business address is:

3    [X]   U.S. SECURITIES AND EXCHANGE COMMISSION, 444 South Flower
           Street, Suite 900, Los Angeles, CA 90071.
4          Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

5    On September 26, 2014, I caused to be served the document entitled **NOTICE
     OF CHANGE OF ATTORNEY BUSINESS OR CONTACT
6    INFORMATION** on all the parties to this action addressed as stated on the
     attached service list:

7    [X]   **OFFICE MAIL:**  By placing in sealed envelope(s), which I placed for
8          collection and mailing today following ordinary business practices.  I am
           readily familiar with this agency's practice for collection and processing of
9          correspondence for mailing; such correspondence would be deposited with
           the U.S. Postal Service on the same day in the ordinary course of business.

10   [ ]   **HAND DELIVERY:**  I caused to be hand delivered each such envelope to
11         the office of the addressee as stated on the attached service list.

12   [ ]   **UNITED PARCEL SERVICE:**  By placing in sealed envelope(s)
           designated by United Parcel Service ("UPS") with delivery fees paid or
13         provided for, which I deposited in a facility regularly maintained by UPS or
           delivered to a UPS courier, at Los Angeles, California.

14   [ ]   **ELECTRONIC MAIL:**  By transmitting the document by electronic mail
15         to the electronic mail address as stated on the attached service list.

16   [X]   **E-FILING:**  By causing the document to be electronically filed via the
           Court's CM/ECF system, which effects electronic service on counsel who
17         are registered with the CM/ECF system.

18   [ ]   **FAX:**  By transmitting the document by facsimile transmission. The
           transmission was reported as complete and without error.

19         I declare under penalty of perjury that the foregoing is true and correct.

20

21   Date: September 26, 2014                      */s/ Javier Delgadillo*
22                                                 Javier Delgadillo

23

24

25

26

27

28

**EXHIBIT** __|__ **PAGE** 82

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SEC v. JUSTIN MOONGYU LEE, et al.**
**United States District Court – Central District of California**
**Case No. 2:14-cv-06865 RGK (Ex)**
**LA-4195**

### SERVICE LIST

Jacob Shahbaz, Esq. (*via U.S. Mail*)
Shahbaz Law Group APC
15760 Ventura Blvd., Suite 850
Encino, CA 91436
Email: jacob@shahbazlaw.com
*Attorney for Defendant Thomas Edward Kent*

EXHIBIT___1___ PAGE 83

1  KAREN L. MATTESON (Cal. Bar No. 102103)
   Email: mattesonk@sec.gov
2  CAROL W. LALLY (Cal. Bar No. 226392)
   Email: lallyc@sec.gov
3  
   검사들
4  증권거래위원회
   Michele Wein Layne, Regional Director
5  Lorraine Echavarria, Associate Regional Director
   John W. Berry, Regional Trial Counsel
6  444 S. Flower Street, Suite 900
   Los Angeles, California 90071
7  전화: (323) 965-3998
   팩스: (213) 443-1904
8  
9                       미합중국 지방 법원
10                    캘리포니아 중앙 지구
11  
12  
13  
14   증권거래위원회,                              Case No.  2:14-cv-06865 RGK (Ex)
15          원고,
                                             변호사 비지니스 혹은
16       대.                                  연락처 정보에 대한
17   저스틴 이문규;                               변경 통지
     레베카 이태원;
18   THOMAS EDWARD KENT;
     AMERICAN IMMIGRANT
19   INVESTMENT FUND I, LLC;
     BIOFUEL VENTURE IV, LLC;
20   BIOFUEL VENTURE V, LLC;
     NEXLAND, INC., dba NEXLAND
21   INVESTMENT GROUP; and
     NEXSUN ETHANOL, LLC,
22  
23          피고.
24  
25  
26  
27  
28  

EXHIBIT __I__ PAGE 84

Case 2:14-cv-06865-RGK-E Document 8   Filed 09/26/14   Page 2 of 4   Page ID #:43

1   법원 서기와 피고들에게:

2        증권거래위원회("위원회") 로스앤젤레스 지구 사무실과 위 머릿글에 관련한

3   문제에 대해 위원회를 대표하는 변호사들의 우편 주소와 팩스 번화가 바뀌었음을

4   부디 주지하시오.

5   이전의 우편 주소는                    5670 Wilshire Blvd., 11th Floor, Los

6   Angeles, CA 90036 그리고 이전의 팩스 번호는 (323) 965-3908. 지금 부터는,

7   우편 주소와 팩스 번호는 다음과 같습니다:

8
9                    Securities and Exchange Commission
                     Los Angeles Regional office
10                   444 S. Flower Street, Suite 900
                     Los Angeles, CA 90071
11                   Telephone:  (323) 965-3998
12                   Facsimile:  (213) 443-1904

13

14   그 어떤  청원서, 발의안, 그리고 여타 서류들은 지금부터는 위원회의 기록된

15   변호사들의 위의 새 주소로 보내져야만 합니다. 위원회에 기록된 변호사들은

16   Karen L. Matteson (Cal. Bar No. 102103) 그리고 Carol W. Lally (Cal. Bar No. 226392).

17

18

19   날짜: 2014년 9월  26일              삼가 제출합니다,

20

21
                          /s/ Karen L. Matteson
22                        Karen L. Matteson
                          Carol W. Lally
23                        원고들
24                        증권거래위원회

26

27

28

2

## 송달 증명

1
2
나는 18세 이상이며 이 소송의 당사자가 아니다. 내 사업체 주소는:

3
[X]  증권거래위원회, 444 South Flower
Street, Suite 900, Los Angeles, CA 90071.
4
전화 번호. (323) 965-3998; 팩스 번호. (213) 443-1904.

5
2014년 9월 26일, 나는 변호사 비지니스 혹은 연락처 정보에 대한 변경 통지
라고 명칭된 문서를 이 소송의 모든 당사자들에게 첨부된 명단에 기재된 대로
6
송달되게 했다:

7
[X]  **사무 우편물:** By placing in sealed envelope(s), which I placed for
collection and mailing today following ordinary business practices.  I am
8
readily familiar with this agency's practice for collection and processing of
correspondence for mailing; such correspondence would be deposited with
9
the U.S. Postal Service on the same day in the ordinary course of business.

10
[ ]  **손배달:** I caused to be hand delivered each such envelope to the office of
the addressee as stated on the attached service list.
11

12
[ ]  **유나이티드 파셜 서비스:** By placing in sealed envelope(s)
designated by United Parcel Service ("UPS") with delivery fees paid or
provided for, which I deposited in a facility regularly maintained by UPS or
13
delivered to a UPS courier, at Los Angeles, California.

14
[ ]  **전자 메일:** By transmitting the document by electronic mail to the
electronic mail address as stated on the attached service list.
15

16
[X]  **E-FILING:** By causing the document to be electronically filed via the
Court's CM/ECF system, which effects electronic service on counsel who
are registered with the CM/ECF system.
17

18
[ ]  **팩스:** By transmitting the document by facsimile transmission. The
transmission was reported as complete and without error.

19
나는 위증죄의 처벌 아래 위에 말한 것이 진실이며 옳다고 단언한다.

20

21
날짜: 2014년  9월 26일,          */s/ Javier Delgadillo*
                                    Javier Delgadillo
22

23

24

25

26

27

28

EXHIBIT____ PAGE 8 6

증권거래위원회 대 저스틴 이명규.및 기타
미합중국 지방법원 캘리포니아 중앙 지구
**Case No. 2:14-cv-06865 RGK (Ex)**
**LA-4195**

<u>송달 목록</u>

Jacob Shahbaz, Esq. (*via U.S. Mail*)
Shahbaz Law Group APC
15760 Ventura Blvd., Suite 850
Encino, CA 91436
Email: jacob@shahbazlaw.com
*검사 Thomas Edward Kent*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT____1____ PAGE____87____

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Securities and Exchange Commission

CASE NUMBER

PLAINTIFF(S)

2:14-CV-6865-RGK(Ex)

v.

Justin Moongyu Lee, et al

**DEFAULT BY CLERK**
**F.R.Civ.P. 55(a)**

DEFENDANT(S).

It appearing from the records in the above-entitled action that summons has been served upon the defendant(s) named below, and it further appearing from the affidavit of counsel for Plaintiff, and other evidence as required by F.R.Civ.P. 55(a), that each of the below defendants have failed to plead or otherwise defend in said action as directed in said Summons and as provided in the Federal Rules of Civil Procedure:

Now, therefore, on request of counsel, the DEFAULT of each of the following named defendant(s) is hereby entered:

Nexland, Inc., dba Nexland Investment- Group

American Immigrant Investment Fund, I, LLC

Biofuel Venture IV, LLC

Biofuel Venture V, LLC

Nexsun Ethanol, LLC

Clerk, U. S. District Court

March 17, 2015

By   Brent Pacillas

Date

Deputy Clerk

CV-37 (10/01)

DEFAULT BY CLERK F.R.Civ.P. 55(a)

**EXHIBIT** 1 **PAGE** 88

Case 2:14-cv-06865-RGK-E Document 23   Filed 03/17/15  Page 1 of 1   Page ID #:184

**미합중국 지방 법원**
**캘리포니아 중앙 지구**

증권 거래 위원회

| | 케이스 번호 |
|---|---|
| 원고(들) | 2:14-CV-6865-RGK(Ex) |

대.

저스틴 이문규 외 등등

**서기에 의한 결석 재판**
**연방민사법 55(a) 항**

피고(들)

위에 명칭된 소송의 기록상, 아래 이름의 피고(들)에게 소환장이 송달된 것으로 보이며, 그리고 더 나아가 검사의 서면증언서상, 그리고 연방민사법 55(a)항이 요구하는 증거상, 아래의 각각 피고들은 거론된 소송에서 거론된 소환장에 지시된 대로 항변하지 못했거나 또는 옹호하지 못한 것으로 보인다:

지금, 그러므로, 검사의 요청에 따라, 아래 이름의 각각 피고(들)은 결석재판에 들어간다:

넥스랜드 투자 구룹으로 사업한 넥스랜드 주식회사 _____

미국 이민 투자 기금 유한책임회사 _____

바이오퓨엘 벤쳐 IV 유한책임회사 _____

바이오퓨엘 V 유한책임회사 _____

넥선 에타놀 유한책임회사 _____

_____      _____

_____      _____

미합중국 지방 법원 서기

| | |
|---|---|
| 2015년 3월 17일 | Brent Pacillas |
| 날짜 | 서기보 |

CV-37 (10/01)        연방민사법. 55(a)항 서기에 의한 결석 재판

**EXHIBIT** I **PAGE** 89